FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Sep 30, 2015*
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ARSENIO PELAYO, FRANCIS MANANKIL, and BRANDON BORELIZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PLATINUM LIMOUSINE SERVICES, INC., KURT TSUNEYOSHI, *et al.*<br><br>Defendants. | CIVIL NO. 15-00023 DKW-BMK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs Pelayo, Manankil, and Boreliz are former employees of Defendant

Platinum Limousine.  Each alleges that Platinum failed to pay wages and expenses

required by the Fair Labor Standards Act ("FLSA") and state law.

Platinum moves to dismiss Plaintiffs' non-FLSA claims.  Platinum's motion

is granted in part because Plaintiffs concede they are not asserting an Hawaii

1

Revised Statutes ("HRS") § 388-2 claim and because Plaintiffs' theory of

conversion of a contingent benefit is not recognized by state law.  Platinum's

motion is denied in part because the FLSA does not preempt an HRS § 388-6

claim, because there is uncertainty regarding the adequacy of Plaintiffs' remedy at

law that renders tenable an unjust enrichment theory, and because Boreliz's claims

have been adequately pled.  Each of these issues is addressed below.

## BACKGROUND

According to Plaintiffs, Platinum employed each of them as limousine

drivers.  Pelayo was employed from January 2012 until November 2013; Manankil

from approximately 2006 until approximately January 2015; and Boreliz for

approximately one month during 2012.  Complaint ¶¶ 6-8.

As limousine drivers, Plaintiffs were paid by the hour, not by the job.  They

allege that Platinum "at least implicitly promised" that it would "comply with

applicable law in paying wages and reimbursing expenses," and that "Plaintiffs

relied on that implicit agreement and continued to provide their services, *i.e.*,

transporting Defendants' customers as directed by Defendants and/or related

services, to the benefit of Defendants and in reliance on that implicit agreement."

Complaint ¶ 29.  Plaintiffs allege they were not paid the amounts required by law

and "as at least implicitly promised by Defendants."  *Id.*

2

According to Plaintiffs, Defendant Kurt Tsuneyoshi owned and operated Platinum, personally exercising control over the nature and structure of their employment, "including the power to hire, fire, supervise, assign tasks, determine the method of payment, and to maintain employment records."  Complaint ¶ 24. Tsuneyoshi was the "highest authority at Platinum" who created and implemented "company-wide policies and procedures" including:

> refusing to pay Plaintiffs and those similar situated: required overtime wages; for cleaning Platinum vehicles; for driving from one customer drop-off to the next customer pickup; for driving from the last customer drop-off to Platinum; for taking Platinum vehicles to service facilities for gas and/or maintenance; and/or for expenses incurred as required by Defendants.  These policies were communicated to Platinum employees orally by Defendant Tsuneyoshi and/or Platinum's manager "Fred", who together supervised Plaintiffs and collective members.

Complaint ¶ 24.

Plaintiffs allege they were not paid as required by law when they were required to report early for duty at Platinum's facility in order to clean Platinum's vehicles before departing to pick up their first customers.  These and other mandatory tasks and meetings could take several hours each day, but Plaintiffs "were not paid any wages or otherwise compensated for this required work."  Complaint ¶ 30.  Thereafter, once the first customer was transported to his or her

destination, Plaintiffs were required to report to the location of the next scheduled customer pickup, and then wait for the customer at the location, sometimes for several hours.  This process of waiting for the next scheduled customer pickup continued throughout the work day and Plaintiffs allege they were not compensated, even though they were not completely relieved of their duties and could not effectively use the time for personal purposes.  Complaint ¶¶ 31-32.

Plaintiffs allege that, after dropping off their last customer each day, drivers were expected to deliver the Platinum vehicles back to the Platinum facility and clean the vehicles.  These tasks could take several hours, but Plaintiffs were not paid any wages or otherwise compensated for this required work.  Complaint ¶¶ 33.  In this way, limousine drivers were denied minimum, regular and overtime wages.  Complaint ¶ 34.  Plaintiffs were also not paid for time spent attending required monthly meetings held by Platinum supervisors.  Complaint ¶ 35.

Overtime wages were allegedly not paid to Plaintiffs who were regularly required to work over forty hours in any given workweek.  Platinum began paying overtime to employees only in 2014 in response to a Department of Labor investigation of Platinum's labor practices.  Complaint ¶ 37.

In addition to the non-payment of wages, Plaintiffs allege that certain expenses were not reimbursed by Platinum.  For example, Plaintiffs allege that

Defendants required limousine drivers to provide bottled water to customers without reimbursement.  Tsuneyoshi purchased cases of water and required Plaintiffs to either purchase the water at a higher price from him or supply their own water for Platinum's customers.   Boreliz also alleges that he was not reimbursed for a gas expense.  Complaint ¶ 35.

Pelayo, Manankil, Boreliz, and unnamed Plaintiffs intend to move for certification of a collective action pursuant to the FLSA and/or HRS Chapter 388. Their proposed collective is composed of between twenty (20) and fifty (50) current and former employees of Platinum in the State of Hawaii.  Complaint ¶¶ 14-15.[1]  Plaintiffs allege that, during relevant time periods, Platinum had a "consistent policy and practice" of:

———————————

[1]Under the FLSA, the collective includes:

> All non-exempt employees of Defendant Platinum who within the three (3) years preceding the filing of the Complaint in this action: (a) actually worked more than 40 hours in any given workweek and did not receive time and a half pay for overtime hours; (b) received less than $7.25 average hourly rate for work performed during any given workweek.  The FLSA collective period is designated as the time from three (3) years immediately preceding the filing of this Complaint, through the conclusion of trial on all issues presented[.]

Under the HRS, the class is defined as:

> All persons employed by Defendant Platinum within the six (6) years preceding the filing of the Complaint in this action and who did not

a. Willfully failing to pay time and a half overtime wages for hours worked over forty (40) per 7-day work week in violation of the FLSA and Hawaii Revised Statutes, sections 388-2, and/or 388-6;

b. Willfully failing to pay minimum, regular or overtime wages for hours worked while driving Platinum vehicles to their first job of the workday and/or returning from the last assignment of the workday, in violation of the FLSA and the Hawaii Revised Statutes, sections 388-2, and/or 388-6;

c. Willfully failing to pay minimum, regular or overtime wages for hours worked between the transportation of Platinum's customers in violation of the FLSA and the Hawaii Revised Statutes, sections 388-2, and/or 388-6;

d. Willfully failing to pay minimum, regular or overtime wages for hours worked cleaning Platinum vehicles, activities required by Defendant Platinum, in violation of the FLSA and the Hawaii Revised Statutes, sections 388-2, and/or 388-6;

e. Willfully failing to pay minimum, regular or overtime wages for hours worked participating in required meetings, in violation of the FLSA and the Hawaii Revised Statutes, sections 388-2, and/or 388-6;

f. Willfully causing employees to incur expenses on Platinum's behalf solely for the benefit of Platinum and willfully failing to reimburse those expenses in violation of the FLSA (29 C.F.R. § 778.217) and the Hawaii Revised Statutes, sections 388-2, and/or 388-6;

---

receive timely compensation for work actually performed, including but not limited to the cleaning of Defendants' vehicles and returning to Platinum's facilities after dropping off the last customer of the day.

Complaint ¶¶ 16-17.

6

> g.      Willfully converting employees' wages and/or
> unreimbursed expenses for their own use; and
>
> h.      Willfully causing and/or failing to prevent the unlawful
> labor conditions despite having the power to do so.

Complaint ¶ 18.

Plaintiffs assert the following causes of action: (1) violation of HRS §§ 388-2 and/or 388-6 for failure to timely pay wages due (Count 1); (2) conversion (Count 2); (3) unjust enrichment (Count 3); and (4) violation of the FLSA, 29 U.S.C. §§ 201 *et seq*. (Count 4).  Defendants move to dismiss Boreliz's claims, together with each of the first three counts of the Second Amended Complaint.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2).  *Id.* at 679.

## DISCUSSION

### I.      Claims Under HRS Chapter 388 (Count 1)

Among other things, HRS Chapter 388 requires employers to pay wages to employees at least twice a month, to refrain from deducting or retaining any part of compensation earned by an employee unless authorized by the employee, and to provide all required notifications, postings, and records required by law.  HRS § 388-11(a) authorizes an employee to file suit to enforce the provisions of Chapter 388, including for the recovery of unpaid wages.

#### A.      Plaintiffs' HRS Section 388-2 Claim is Dismissed.

Defendants move to dismiss Plaintiffs' HRS § 388-2 claim because Plaintiffs do not plead any facts indicating that Platinum did not pay Plaintiffs twice per month.  Under the statute,

> Every employer shall pay all wages due to the employer's
> employees at least twice during each calendar month, on regular
> paydays designated in advance by the employer, in lawful
> money of the United States, with checks convertible into cash
> on demand at full face value thereof, by direct deposit to the
> employee's account at a federally insured depository institution
> as provided in subsection (d), or by other means as provided in
> section 388-5.7[.]

HRS § 388-2(a).  *See also Arimizu v. Fin. Sec. Ins. Co.*, 5 Haw. App. 106, 109, 679 P.2d 627, 631 (1984) ("The legislative policy underlying Part I of HRS Chapter 388 (1976, as amended) is that an employer should pay to its employees their wages 'at least twice during each calendar month' in accordance with the provisions of HRS § 388-2.").

Plaintiffs do not allege that Platinum failed to pay wages "at least twice during each calendar month."  In fact, Plaintiffs appear to concede this claim, as their opposition is silent with respect to Platinum's section 388-2 contentions. Accordingly, Plaintiffs fail to state a claim for violation of HRS § 388-2, and the motion is GRANTED as to this portion of Count 1.

## B.   The FLSA Does Not Preempt HRS Section 388-6.

Under HRS § 388-6, employers may not deduct or retain portions of compensation earned by an employee without consent or legal obligation.[2] Plaintiffs allege that Platinum violated this section when it refused to pay minimum wage and overtime wages required by law, refused to pay wages earned, and refused to reimburse expenses.  Defendants move to dismiss the HRS § 388-6 claim, arguing that (1) the claim is preempted by the FLSA; and (2) HRS § 388-6 is not an alternate mechanism to enforce the FLSA.

The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution, which establishes federal law as the "supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  There are generally three ways in which state

_____

[2]HRS § 388-6, concerning "Withholding of wages," provides in relevant part: "No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee[.]"

> An employer who "fails to pay wages in accordance with this chapter without equitable justification" is liable to the affected employee for a sum equal to the amount of unpaid wages, in addition to the wages due.  H.R.S. § 388-10.  The Hawaii legislature enacted sections 388-6 and 388-10 to "encourage employers to pay wages promptly, reduce an employee's economic losses, and strengthen the law."  *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 32 P.3d 52, 67 (2001) (internal citations and quotation marks omitted).

*Davis v. Four Seasons Hotel Ltd.*, 810 F. Supp. 2d 1145, 1151 (D. Haw. 2011)

law may be preempted by federal law: (1) express preemption, which exists when Congress has explicitly defined the extent to which its enactments preempt state law; (2) implied field preemption, which exists when state law attempts to regulate conduct in a field that Congress intended federal law to occupy exclusively; and (3) implied conflict preemption, which exists when compliance with both state and federal requirements is impossible, or when state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. *See Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-80 (1990)); *see also Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) ("Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field.").

While not entirely clear, it appears that Defendants intend to rely on field preemption[3]: Plaintiffs' section 388-6 "is preempted because it simply duplicates

[3]Platinum points to no express preemption clause in the FLSA that is applicable here. In support of its apparent field preemption argument, Defendants point the Court to *Fuller v.Golden Age Fisheries*, 14 F.3d 1405 (9th Cir. 1994) (holding that the FLSA seaman exemption preempted Alaska minimum wage claims where Alaska had no strong interest in application of its own law),

[the] FLSA claim, except for the limitations period, but the FLSA provides the

exclusive remedy."  Mem. in Supp. at 8.  The Ninth Circuit, however, has

foreclosed a field preemption approach.  *See Williamson v. Gen. Dynamics Corp*.,

208 F.3d 1144, 1151 (9th Cir. 2000) ("The [FLSA] contains a 'savings clause' that

allows states and municipalities to enact stricter wage and hour laws.  *See* 29

U.S.C. § 218(a). . . .  [FLSA's] 'savings clause' is evidence that Congress did not

intend to preempt the entire field. . . .  While the FLSA may be a comprehensive

remedy, as the district court argues, the 'savings clause' indicates that it does not

provide an exclusive remedy."); *see also Knepper v. Rite Aid Corp*., 675 F.3d 249,

262 (3d Cir. 2012) ("Express preemption is improper here, as the statute's plain

language evinces a clear intent to preserve rather than supplant state law.

---

and *Sosnowy v. A. Perri Farms, Inc*., 764 F. Supp. 2d 457 (E.D.N.Y. 2011) (holding that, to the extent a state common law claim seeking recovery of overtime wages is premised on an FLSA violation, it is preempted, but on the contrary, to the extent a state common law claim is premised on a valid contractual agreement not directly implicating the FLSA, it is not preempted).  *See* Mem. in Supp. at 8-9; Reply at 9.  Neither of these cases speaks to whether Plaintiffs' section 388-6 claims are preempted by the FLSA as a matter of law and are distinguishable: neither the FLSA seaman exemption nor state common law claims are in play here.  Moreover, the Ninth Circuit is clear in *Williamson v. Gen. Dynamics Corp*., 208 F.3d 1144, 1150 (9th Cir. 2000), that field preemption is inapplicable because "the FLSA contains a 'savings clause' that enables states and municipalities to enact more favorable wage, hour, and child labor legislation." (citing 29 U.S.C. § 218(a)).  *Williamson* reasoned that the savings clause indicates that the FLSA "does not provide an exclusive remedy" and is therefore "evidence that Congress did not intend to preempt the entire field."  *Id.* at 1151.

Moreover . . . the presence of the savings clause undermines any suggestion that Congress intended to occupy the field of wage and hour regulation.").

To the extent its imprecise argument is also based on conflict preemption, as its reference to certain cases suggest, Platinum remains unable to point to any authority holding that Plaintiffs' particular section 388-6 claims are preempted by the FLSA.  Platinum directs the Court to *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000) (holding that state law career fraud claims are not categorically preempted by the FLSA, nor contrary to the FLSA's purpose of protecting employees).  Ninth Circuit law on conflict preemption, and this Court's review of the relevant statutes, however, reveal no irreconcilable conflict between the FLSA and HRS § 388-6.  These provisions are substantively similar, except for their respective limitations period.  The Court's review of the case law indicates that, where a plaintiff's state law claims are merely similar to his FLSA claims, they are not preempted.[4]  *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144

---

[4]The Court observes that the section 388-6 claim set forth in Count 1 does not appear on its face to merely duplicate the FLSA claim set forth in Count 4.  For example, section 388-6 prohibits an employer from retaining wages, in addition to deducting or charging against wages.  This is more than an identical claim for overtime wages or total hours worked because it also encompasses claims for wages earned but not paid for specific tasks, and under section 388-10, an employer who fails to pay wages in violation of Chapter 388 is liable for double damages-- both the wages legally due and "a sum equal to the amount of unpaid wages" plus interest.  *See* HRS § 388-10(a).  Indeed, Platinum acknowledges that "[t]here is a difference between a

(9th Cir. 2000); *Wang v. Chinese Daily News, Inc*., 623 F.3d 743, 760 (9th Cir. 2010), certiorari granted, judgment vacated by 132 S. Ct. 74 (2011) ("FLSA does not preempt a state-law . . . claim that 'borrows' its substantive standard from FLSA."); *see also Knepper*, 675 F.3d at 262 ("Congress explicitly contemplated dual enforcement of the FLSA.  Moreover, a finding of preemption here would bar enforcement of all state wage and hour laws that did not exceed the standards of the FLSA, a significant intrusion on state authority and a reversal of the traditional presumption against preemption, which is particularly strong given states' lengthy history of regulating employees' wages and hours.").  Other district courts generally agree.  *See, e.g, Thorpe v. Abbott Labs., Inc.,* 534 F. Supp. 2d 1120, 1124 (N.D. Cal. 2008) ("[T]he FLSA clearly indicates that it does not preempt stricter state law claims.") (citing 29 U.S.C. § 218(a)); *Takacs v. A.G. Edwards & Sons, Inc.,* 444 F. Supp. 2d 1100, 1116 (S.D. Cal. 2006) ("The Ninth Circuit has held that the FLSA does not preempt state law overtime wage laws[.]") (collecting cases); *Bahramipour v. Citigroup Global Markets, Inc.,* 2006 WL 449132 (N.D. Cal. Feb. 22, 2006) (holding that a California Unfair Competition Law or "UCL" claim could be predicated on an alleged FLSA violation, and not conflict with

---

deduction from pay that is the target of HRS § 388-6 and a failure to pay the full amount of wages due under minimum wage laws."  Reply at 13.

14

congressional goals under the FLSA); *Barnett v. Washington Mutual Bank*, 2004 WL 2011462, (N.D. Cal. Sept. 9, 2004) (same); *see also Bouaphakeo v. Tyson Foods, Inc*., 564 F. Supp. 2d 870, 886 (N.D. Iowa 2008) (holding that the FLSA does not preempt a state law claim "where there is no controlling authority on the subject and the court believes the FLSA does not provide the exclusive remedy for its violation.").

Platinum contends that allowing Plaintiffs to enforce "stale FLSA claims (older than the three-year FLSA statute of limitations for willful violations and longer than the three-year recordkeeping requirement) would place an obviously unintended, surprise burden on employers[,]" and is inconsistent with FLSA's three-year record-keeping requirements.  Reply at 6-8.  Whether the longer limitations period applicable to section 388-6 claims is consistent with FLSA's record-keeping requirements, however, does not satisfy the conflict preemption analysis discussed above.  The fact that record-keeping is not required under HRS Chapter 388 does not (1) make it impossible to comply with both state and federal requirements; or (2) create an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  *See Williamson*, 208 F.3d at 1152 (discussing types of conflict preemption).

In sum, the Court finds no implied field or conflict preemption based on the FLSA.  To be clear, where the FLSA does not provide the exclusive remedy for its violations, Platinum has not established that Plaintiffs' section 388-6 claim "interferes," "frustrates," "conflicts," or "stands as an obstacle" to the goals of the FLSA.  Permitting this claim to go forward does not frustrate Congress' intent to protect employees against substandard wages or oppressive working hours.  Accordingly, as to Plaintiffs' § 388-6 claim, the motion is DENIED.

### C.   Plaintiffs State a Plausible Claim for Relief

In their reply brief, Defendants contend that Plaintiffs have no viable claim under HRS Chapter 388 because there is no "cause of action for uncompensated work time that the employer never agreed to pay for."  Reply at 4 (citing cases).  The cases relied upon by Platinum, however, included contractual or bargained-for benefits or commissions that were not in fact earned by the employee.  The allegations here do not involve unused vacation time, benefits, or commissions due pursuant to any type of formal employment agreement.  Platinum argues that, "Plaintiffs do not allege that Defendants 'withheld' any amount that Defendants had otherwise agreed to pay."  Reply at 13.  Plaintiffs allege, however, that Defendants implemented "company-wide policies and/or decisions include[ing] refusing to pay Plaintiffs," Complaint ¶ 24, and that "Defendants at least implicitly

promised Plaintiffs that Defendants would comply with applicable law in paying

wages and reimbursing expenses."  Complaint ¶ 29.

Plaintiffs point to at least one case from this district, *Hillhouse v. Hawaii*

*Behavioral Health*, LLC, 2014 WL 5528239 (D. Haw. Oct. 31, 2014), which

permitted an unpaid wages claim to proceed under HRS § 388-6.  The defendant in

*Hillhouse* sought dismissal on the ground that the plaintiff did not allege that she

was not properly paid the wages earned at the time she left her employment.  The

Court disagreed, finding that the plaintiff stated a plausible claim where she

alleged that, "'Defendants further refused to pay the full amount of Plaintiff's . . .

remaining salary and bonus amounts due,' [Complaint at ¶ 89,] and 'wrongfully

withheld Plaintiff's wages' [id. at ¶ 129]."  *Hillhouse*, 2014 WL 5528239, at *2

("Although she does not allege any additional details, what she does include is

sufficient to plead a plausible claim under Chapter 388.").

Likewise, Plaintiffs here allege that they were hourly employees who

completed tasks for which they were not compensated, but for which compensation

had been earned.  Under the plain language of the relevant provisions, Plaintiffs

state a plausible claim to recover unpaid wages.  *See* HRS §§ 388-6 and 388-11.

At this stage of the litigation, Plaintiffs are entitled to pursue their claim.  *Cf.*

*Balboa v. Hawaii Care & Cleaning, Inc*., 2015 WL 1956360, at *7 (D. Haw. Apr.

28, 2015) (Granting summary judgment for employer, holding that "because Plaintiffs seek to recover wages to which they have failed to demonstrate that they are legally entitled, they cannot bring a statutory claim under Chapter 388."). Accordingly, the motion is DENIED as to Plaintiffs' Count 1 claim under HRS § 388-6.

## II.   <u>Conversion (Count2)</u>

Count 2 alleges that at the end of each pay period, "Plaintiffs had legal title and ownership interest in the wages earned," and "had legal title in amounts Plaintiffs advanced as expenses for the benefit of Defendants' business." Complaint ¶¶ 148-49.  Plaintiffs assert that, when Defendants "knowingly and intentionally refused to pay Plaintiffs . . . wages and expenses they were owed," they "convert[ed] them to Defendant(s)' own use."  Complaint ¶ 150.  Defendants move to dismiss the Count 2 conversion claim on the ground that Hawaiʻi courts do not and would not recognize a conversion claim for unpaid wages.

Under Hawaiʻi law, conversion encompasses the following acts:

> "(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." *Tsuru v. Bayer*, 25 Haw. 693, 696 (1920). . . . However, conversion does not require wrongful intent.  18A Am.Jur.2d Conversion § 3 (2010); *Federal Ins. Co. v. Fries*, 78 Misc.2d 805, 355 N.Y.S.2d 741, 744 (N.Y.City Civ.Ct. 1974).

> "[T]he defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant." *Morissette v. United States*, 342 U.S. 246, 253, 72 S.Ct. 240, 96 L.Ed. 288 (1952). "So long as he [or she] intends to deal with the property in a way which is in fact inconsistent with the plaintiff's right, he [or she] is a converter." *Fries*, 355 N.Y.S.2d at 744.

*Freddy Nobriga Enters., Inc. v. Hawai'i Dep't of Hawaiian Home Lands*, 129 Hawai'i 123, 129-30, 295 P.3d 993, 999-1000 (App. 2013) (some alterations in original).  This district court has recognized that "the tort claim of conversion does not extend to the unauthorized taking of intangible property." *J & J Sports Prods., Inc. v. Alcantara*, 2014 WL 1669070, at *5 (D. Haw. Apr. 25, 2014).

Hawai'i courts have not directly addressed whether a conversion claim exists for unpaid wages and refusal to reimburse expenses as alleged here.  *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, 490 F. Supp. 2d 1091, 1107-08 (D. Nev. 2007) ("Hawaii has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiffs' Complaint.").  In the absence of a governing state court decision, the Court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011); *see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th

Cir. 2004) ("To the extent this case raises issues of first impression, our court,

sitting in diversity, must use its best judgment to predict how the Hawai'i Supreme

Court would decide the issue.") (quotations and brackets omitted).

The United States District Court for the District of Nevada forecast that

Hawai'i would not recognize a conversion claim based on unpaid wages or where a

defendant alters its own electronic payroll records to avoid paying the plaintiff's

wages.  *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, 490 F.

Supp. 2d at 1108-09.  Surveying the case law on conversion from Hawai'i state

courts, the Nevada court observed:

> In Hawaii, "[a]ny distinct act of dominion wrongfully exerted
> over one's property in denial of his right, or inconsistent with it,
> is a conversion."  *Tsuru v. Bayer*, 25 Haw. 693, 1920 WL 830,
> *2 (Hawaii Terr. 1920).  Traditionally, conversion occurs when
> a defendant "detain[s] goods so as to deprive the person entitled
> to the possession of his dominion over them."  *Id.*  However,
> Hawaii has followed the modern trend and recognizes a claim
> for conversion where property rights are merged into a
> document, such as a bill of lading.  *Matsuda v. Wada*, 101 F.
> Supp. 2d 1315, 1322 (D. Haw. 1999) (holding plaintiff stated
> conversion claim where he owned boat and consequently had a
> right to possess bill of lading, but defendant refused to turn over
> bill of lading until plaintiff paid for other services rendered).
>
> . . . Hawaii's definition of conversion to date has specified that
> it applies to "goods," reflecting the common law roots of the
> conversion cause of action.  Although Hawaii has extended
> conversion to include intangible rights merged into a document,
> Hawaii has not indicated an intent to permit a conversion claim

20

> based on unpaid wages or any similar general debt.  Absent
> direction from Hawaii that it would extend conversion to cover
> a general debt, the Court concludes Hawaii would continue to
> adhere to the theory that conversion applies to tangible goods or
> intangible rights merged into a document, such as the bill of
> lading in *Matsuda*.

*Id.* at 1107-08.  Although Plaintiffs point to the Hawaii Supreme Court's decision

in *Hough v. Pacific Insurance Co., Ltd.,* 83 Hawaiʻi 457, 927 P.2d 858 (1996), as

support for their conversion claim, *Hough* itself did not adjudicate the merits of a

conversion claim based upon unpaid wages or hold that such a claim exists at all.[5]

---

[5]As the district court explained in the *Walmart* case—

> In *Hough*, the plaintiff suffered a work-related injury for which he sought
> worker's compensation benefits.  *Id.* at 861.  When the insurer terminated
> his benefits, the employee brought suit alleging the insurer committed
> several torts, including conversion, and acted in bad faith in processing his
> claim.  *Id.* at 863.  The lower court granted the insurer's motion for
> summary judgment on the conversion claim, concluding withholding the
> compensation funds did not amount to conversion.  *Id.*  Although the
> lower court concluded the worker's compensation laws did not bar the
> employee from seeking tort remedies, the lower court later granted another
> motion for summary judgment in the insurer's favor, finding the worker's
> compensation laws provided the plaintiff with his exclusive remedy.  *Id.*

> On appeal, the Hawaii Supreme Court stated the lower court granted
> summary judgment based on the merits of the conversion claim, however,
> the Hawaii Supreme Court never addressed the merits of the conversion
> claim in its decision.  Instead, it treated the conversion claim as if the
> lower court had granted summary judgment on the basis that the worker's
> compensation laws barred the conversion tort.  The Hawaii Supreme Court
> thus reversed and remanded the conversion claim for trial on the basis that
> the claim was not barred, but the Hawaii Supreme Court never addressed
> substantively the lower court's ruling that the employee failed to state a

Rather, as the Nevada District Court explained, "because *[Hough]* did not substantively address the conversion claim on the merits, this Court does not conclude that Hawaii Supreme Court implicitly overruled the lower court's ruling." *Id.* at 1108.

The Nevada District Court also considered the plaintiffs' argument that the defendants had "converted the electronic payroll records" evidencing the hours worked by plaintiffs. *Id.* at 1109. It concluded that "Hawaii would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged[.]" *Id.* The court reasoned that "Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document." *Id.* It further explained, based upon its reading of the state's conversion jurisprudence, that—

> Hawaii has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Hawaii would expand its

---

> conversion claim for the insurer's withholding of compensation benefits. Because the Hawaii Supreme Court did not substantively address the conversion claim on the merits, this Court does not conclude the Hawaii Supreme Court implicitly overruled the lower court's ruling.

*In re Wal-Mart Wage & Hour Employment Practices Litig.,* 490 F. Supp. 2d 1091, 1108 (D. Nev. 2007).

> conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Hawaii law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion.  Nothing in Hawaii law suggests Hawaii would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff.

*Id.*  The Nevada District Court summarized its prognosis as follows:  "Hawaii would not recognize a claim for conversion based on unpaid wages.  Additionally, the Court concludes Hawaii would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages." *Id.*

While clearly predictive, the Nevada court's reasoning is sound and appropriately neither extends Hawai'i law where it has yet to go, nor extends Hawai'i law in a direction that it thus far shows no inclination of going.  In light of the Hawai'i Supreme Court's previous statements, the Intermediate Court of Appeals' holding in *Freddy Nobriga Enterprises*, and the district court's on-point decision in the *Wal-Mart Wage & Hour Employment Practices Litigation,* this Court predicts that the Hawai'i Supreme Court would hold that, under Hawai'i law, the tort claim of conversion does not extend to Plaintiffs' allegations here.

23

Accordingly, the motion is GRANTED, and Count 2's conversion claim is DISMISSED.

## III.   <u>Unjust Enrichment (Count 3)</u>

Plaintiffs allege in Count 3 that they conferred benefits upon Defendants by providing labor, services, and goods without compensation or reimbursement, and that Defendants' retention of these benefits is unjust and violates public policy. Complaint ¶¶ 157-161.  Plaintiffs seek restitution and an equitable lien on Defendants' property as a remedy for their unjust enrichment claim.

The elements of an unjust enrichment claim are: (1) the plaintiff has conferred a benefit upon the defendant, and (2) retention of that benefit would be unjust.  *Porter v. Hu*, 116 Hawai'i 42, 55, 169 P.3d 994, 1007 (App. 2007). Further, there must be "an absence of an adequate remedy at law."  *Id.*

Defendants seek dismissal of this claim because the FLSA provides an adequate remedy at law.  Plaintiffs argue that although they have statutory claims under both the FLSA and HRS § 388-6 and may therefore have an adequate remedy at law, their unjust enrichment claim should be left intact in the event that an appellate court concludes that these claims, or portions of these claims, cannot stand.  The Court agrees that Count 3 is properly pled in the alternative and will permit the claim to move forward at this time.  *See* Fed.R.Civ.P. 8(a)(3) ("A

pleading that states a claim for relief must contain: . . . a demand for the relief

sought, which may include relief in the alternative or different types of relief.").

The Court's holding is consistent with Federal Rule of Civil Procedure 8(d),

which provides in pertinent part that—

> (2)   **Alternative Statements of a Claim or Defense.**  A party
> may set out 2 or more statements of a claim or defense
> alternatively or hypothetically, either in a single count or
> defense or in separate ones. If a party makes alternative
> statements, the pleading is sufficient if any one of them is
> sufficient.

> (3)   **Inconsistent Claims or Defenses.**  A party may state as
> many separate claims or defenses as it has, regardless of
> consistency.

Fed.R.Civ.P. 8(d).  Here, Plaintiffs may assert an unjust enrichment claim, in the

alternative, where the absence of an adequate remedy at law is a necessary

prerequisite to maintaining it.  *See Davis v. Four Seasons Hotel Ltd.*, 2011 WL

5025521, at *6 (D. Haw. Oct. 20, 2011) ("If an appellate court rules that Plaintiffs'

wage claim is unavailable, Plaintiffs may request that the appellate court remand

for reconsideration of their unjust enrichment claim."); *Porter*, 169 P.3d at 1007

(holding that a tort claim did not preclude agents from also bringing an unjust

enrichment claim for the deprivation of the agents' books of business); *see also*

*Soule v. Hilton Worldwide, Inc*., 1 F. Supp. 3d 1084, 1103-04 (D. Haw. 2014)

(discussing principles of unjust enrichment applicable to fill a gap where no express remedy is provided) (citing *O'Gea v. Home Depot USA, Inc.*, 2009 WL 799757 at *2 (E.D. La. Mar. 20, 2009)).  Accordingly, Defendants' motion is DENIED as to Count 3.

## IV.   **Claims Brought by Boreliz**

Defendants move to dismiss the overtime and minimum wage violation claims asserted by Boreliz on the grounds that he fails to allege: (1) his rate of pay; (2) the number of hours he worked in any work week; (3) that he ever worked over 40 hours in any work week; (4) that he was required to bear any expense on behalf of Defendants; or (5) that he requested and was denied reimbursement for any expense borne on behalf of Defendants.  Reply at 2.  With respect to Boreliz, however—and all members of the proposed collective— the Second Amended Complaint does allege that Plaintiffs worked more than forty hours a week, were not paid overtime or minimum wage, were not compensated for required tasks and were not reimbursed for expenses.  *See* Complaint ¶¶ 14-39.

Boreliz specifically alleges that—

> on one of the weeks worked in 2012 during the approximately one month period when Plaintiff Boreliz worked at Platinum, Defendants refused to reimburse Mr. Boreliz for approximately $75 Mr. Boreliz had spent on gasoline for Defendants' vehicle. It is believed that inclusion of that expense will result in Mr.

26

Boreliz having been paid less than minimum wage on that workweek.

Complaint ¶ 119.  He also alleges that—

> 139.   Plaintiff Brandon Boreliz worked for Defendants for approximately one month during 2012.  Mr. Boreliz spent at least two hours cleaning Platinum vehicles and/or driving to and/or from customer pickups on each of those days.  Mr. Boreliz was not compensated at any rate for this work.

> 140.   Mr. Boreliz did not work at Platinum long enough to have been required to attend the monthly meeting.  However, Platinum did refuse to reimburse Mr. Boreliz for gasoline he purchased for Platinum's vehicle.  The expense was approximately $75.

> 141.   Plaintiff Brandon Boreliz had also previously worked for Defendants.  This prior period of employment ended in 2004.  Defendants did not pay Mr. Boreliz for overtime hours worked during that period of employment.

Although the allegations specific to Boreliz are not exhaustive, they are sufficient for Rule 8 purposes and clearly place Defendants on notice of the claims against them, with enough detail to guide discovery.  It is well-established that a complaint may be dismissed for failure to comply with Rule 8 where it fails to provide the defendants with fair notice of the wrongs they have allegedly committed, but this is not such a case.  *See McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with

enough detail to guide discovery"); *cf. Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling").

"In the *Twiqbal* era, plaintiffs must state facts that 'plausibly suggest an entitlement to relief.'"  *Harris v. Amgen, Inc.,* 788 F.3d 916, 925 (9th Cir. 2015) (Kozinski, J., dissenting from denial of rehearing en banc) (quoting *Iqbal*, 556 U.S. at 681).  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not merely provide speculation of the right to relief.  *See Twombly*, 550 U.S. at 586.  Boreliz satisfies the plausibility standard here.  Mindful of the pleading requirements at this stage of the litigation, the motion is DENIED as to Boreliz's claims.

## <u>CONCLUSION</u>

On the basis of the foregoing, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Count 1 claim under HRS § 388-2 and Count 2 claim for conversion.  The motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED: September 30, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Pelayo, et al. v. Platinum Limousine Services, Inc., et al.*; Civ. No. 15-00023 DKW-BMK;
**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**