RICHARD L HOLCOMB (HI Bar No. 9177)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com

TIMOTHY MAC MASTER (HI Bar No. 5085)
Attorney at Law
1088 Bishop Street
Suite 209
Honolulu, HI  96813
Telephone: (808) 591-8080
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | | |
|---|---|---|
| ARSENIO PELAYO, and | ) | CASE NO. 1:15-cv-023 DKW KSM |
| | ) | |
| BRANDON BORELIZ, | ) | OBJECTIONS TO REPORT AND |
| | ) | RECOMMENDATION ENTERED |
| Plaintiffs, | ) | JUNE 6, 2016 [Doc. 134]; |
| vs. | ) | DECLARATION OF RICHARD L. |
| | ) | HOLCOMB; EXHIBITS "A" |
| PLATINUM LIMOUSINE SERVICES, | ) | THROUGH "C"; CERTIFICATE OF |
| INC., | ) | SERVICE |
| | ) | |
| KURT TSUNEYOSHI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**OBJECTIONS TO REPORT AND RECOMMENDATION
ENTERED JUNE 6, 2016 [Doc. 134**

# TABLE OF CONTENTS

I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY . . . . 1

II.  OBJECTIONS AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 2

A.  The awarded hourly rates are too low. . . . . . . . . . . . . . . . . 2

B.  Time for Retainer Agreements . . . . . . . . . . . . . . . . . . . . . . . 12

C.  Time for the phone call to Disciplinary Counsel . . . . . . . . . 12

D.  Hours should not be deducted for "duplicative" billing. . . . 13

E.  Clerical Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

F.  Counsel did not spend excessive time on this case. . . . . . . . 19

SAC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Motion to Compel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Attorneys' Fees Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Rule 30(b)(6) Deposition . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Supplemental Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

G.  The award should not be further reduced by 30%. . . . . . . 29

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

## Reported Cases

*Au v. Funding Grp., Inc.*, 933 F.Supp.2d 1264 (D. Haw. 2013) . . . . . . 6, 7

*Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003) . . . . . . . . . . 8

*Camacho v. Bridgeport Financial, Inc.*,
525 F.3d 973 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 10

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) . . . . . 8

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) . . . . . . . . . . . . . . . . 6-7, 22

*Democratic Party of Washington State v. Reed*,
388 F.3d 1281 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 17

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) . . . . . . . . . . . . . . . .  9, 29

*Gates v. Deukmijian*, 987 F.2d 1392 (9th Cir. 1992) . . . . . . . . . . . . .  8

*Kay v. Ehrler*, 499 U.S. 432 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) . . . . . .  30

*Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014) . . . . 23

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2003) . . . . . . . 8, 23, 25,
27

*Robinson v. Plourde*, 717 F.Supp.2d 1092 (D. Haw. 2010) . . . . . . . . . 9

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Unreported Cases and Dispositions

*Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*,
07-00007 DAEKSC,
2007 WL 2320672 (D. Haw. Aug. 10, 2007) . . . . . . . . . . . . . . . . . . . . 7-8

*DeCampo v. Potts*, CIV. 2:06-1283 WBS,
2014 WL 788429 (E.D. Cal. Feb. 25, 2014) . . . . . . . . . . . . . . . . . . . .  16-17

*De-Occupy Honolulu, et. al. v. City and County of Honolulu*,
No. 1:12-cv-00668 JMS-KSC,
2015 wl 1013834 (D. Haw. March 9, 2015) . . . . . . . . . . . . . . . . . . . . 3

*Harris v. Trash Man, LLC*, CIV. 12-00169 HG-KSC,
2013 WL 1932715 (D. Haw. Apr. 16, 2013) . . . . . . . . . . . . . . . . . . . . 6, 7, 13

*Hawaii Defense Found. v. City and County of Honolulu*,
No. 12-CV-00469 JMS-RLP,
2014 wl 2804448 (D. Haw. June 16, 2014) . . . . . . . . . . . . . . . . . . . . 3

*James v. City and County of Honolulu*,
1:13-cv-00397 JMS-BMK, 2014 wl 6908313 (D. Haw. Feb. 3, 2015) . 3

*Knickerbocker v. Corinthian Colleges*,
2014 U.S. Dist. LEXIS 111733 (W.D. Wash. Aug. 12, 2014) . . . . . .  11

*Olson v. Lui*, CIV 10-00691 ACK,
2012 wl 3686682 (D. Haw. Aug. 27, 2012) . . . . . . . . . . . . . . . . . . . . 9

*Onishi v. Redline Recovery Servs., LLC*,
CIV. 10-00259, 2010 WL 5128723 (D. Haw. Nov. 12, 2010) . . . . . . . 6, 7

*Roberts v. City and County of Honolulu*,
Civ. No. 15-00467 ACK-RLP (June 3, 2016) (Exhibit "C") . . . . . . . . . 3

*Sam K. v. Dep't of Educ., Hawaii*, CV 12-00355 ACK-BMK,
2013 WL 1856069 (D. Haw. Apr. 30, 2013) . . . . . . . . . . . . . . . . . . . . 10

*Velez v. Wynne*, 220 Fed. Appx. 512 (9th Cir. 2007) . . . . . . . . . . . . . . 29-30

COME NOW the Plaintiffs, Arsenio Pelayo and Brandon Boreliz, pursuant to 28 U.S.C. § 636(b)(1), Rules 54(d)(2)(D) and 72(b)(2) of the Federal Rules of Civil Procedure, and Rules 74.2 or 74.3 of the Local Rules of this Court and objects to the Report and Recommendation entered June 6, 2016 as Doc. 134.  Plaintiffs request, following *de novo* review, *see* Fed. R. Civ. P., Rule 72(b)(3) and LR 74.2, that the Recommendation be modified pursuant to the following objections and that counsel be fully awarded for work completed in this case, including on the instant objections.

## I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

For decades and until the Department of Labor began its investigation of Defendants in 2014, Defendants refused to pay their employees overtime wages and for off-the-clock tasks as required by law.  [*See* Docs. 66-1; 68-2 ¶¶ 6-8; 68-3 ¶¶ 6-8, 9-12; 68-4 ¶¶ 3-4 6-7; 68-5 ¶¶ 1, 5, 12]  This case was filed on January 5, 2015 and promptly removed to this Court.  [Docs. 1, 1-1]  As set forth in detail throughout this record (and specific examples discussed below), including counsel's declaration attached to the instant motion, [Doc 124-11 ¶¶ 6-25], Defendants needlessly and tenaciously litigated Plaintiffs' claims at every opportunity, refused to cooperate in discovery, and refused to participate in meaningful settlement negotiations until more than one year had elapsed in this litigation and this Court mandated Defendants' participation in a Settlement Conference.  [Docs. 113; 124-1, pp. 2-13]

At the mandated Settlement Conference on January 15, 2016, the case finally settled with Mr. Pelayo receiving more than five times the amount of the Defendants' sole offer in this yearlong litigation and Mr. Boreliz receiving 100% of the amount he ever demanded. [Docs. 122, 124-12]

Throughout this litigation, the sole "loss" that Plaintiffs endured was the denial of their Motion to Conditionally Certify the Collective. [Doc. 112] All hours attributable to this Motion, including the interviewing of Prospective Plaintiffs who also were integral to the investigation of the case and may have served as witnesses, were removed from counsel's time sheet. [Doc. 124-10 ¶ 4]

Pursuant to the Settlement Agreement, [Doc. 124-12], Plaintiffs timely moved for Attorneys' Fees and Costs. [Doc. 124] After requiring supplemental briefing, [Docs. 131-33], the Magistrate recommended that Plaintiffs' request of $141,347 in fees be reduced to $51,109.10, a 64% deduction in the requested fees. [Doc. 134, pp. 41-42] Plaintiffs object as follows.

## II. OBJECTIONS AND ARGUMENT

### A. The awarded hourly rates are too low.

This Court should award the requested hourly rates for at least three reasons:

1. The rate that non-indigent clients pay in other types of cases is the amount that should be awarded in fee-shifting cases. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

2.     Mr. Holcomb was awarded the same rate that he was awarded for work done four years ago.[1]  Even then, the rate was too low.  Counsel has objected to this awarded rate at each opportunity throughout the years.  *Hawaii Defense Foundation v. City and County of Honolulu*, Civ. No. 12-00469 JMS-RLP, 2014 wl 2804448 (D. Haw. June 19, 2014) ($355/hr requested rate rejected and $200/hr imposed for Mr. Holcomb); *Choon James v. City and County of Honolulu*, Civ. No. 13-00397 JMS-BMK, 2014 wl 6908313 (D. Haw. Dec. 8, 2014) ($355/hr requested rate rejected and $200/hr imposed for Mr. Holcomb); *De-Occupy Honolulu v. City and County of Honolulu*, Civ. 12-00668 JMS-KSC, 2015 wl 1013834 (D.Haw. March 9, 2015). Yet the rate has stagnated, despite the passage of time, continued accrual of experience, addition of evidence to the fees motions, inflation, or any other factor. S*ee Roberts v. City and County of Honolulu,* Civ. No. 15-00467 ACK-RLP, *Order*

---

[1] Counsel has attached as **Exhibit "A"** counsel's Declaration and timesheet, filed with this Court on February 4, 2014 as Document 56-2 in the case styled *Hawaii Defense Foundation, et. al. v. City and County of Honolulu, et. al.*, Civ. 12-00469 JMS-RLP, and **Exhibit "B"** counsel's Declaration and timesheet, filed with this Court on August 11, 2014 as Document 205-13 in the case styled *De-Occupy Hawaii, et. al. v. City and County of Honolulu, et. al.*, 1:12-cv-00668 JMS KSC. Plaintiff requests this Court take judicial notice of these documents pursuant to Rule 201(c)(2) of the Federal Rules of Evidence.  Importantly, the exhibits establish that Mr. Holcomb began work on that case on March 13, 2012.  *See* Exhs. "A" and "B". Yet the rate awarded in those cases (and all others) was the exact amount of the rate awarded in this case, for work done four years later.  *See Hawaii Defense Foundation v. City and County of Honolulu*, Civ. No. 12-00469 JMS-RLP, 2014 wl 2804448 (D. Haw. June 19, 2014); *De-Occupy Honolulu v. City and County of Honolulu*, Civ. No. 12-00668 JMS-KSC, 2015 wl 1013834 at *9-10 (March 9, 2015).

*Adopting in Part and Modifying in Part the Findings and Recommendation to Grant in Part and Deny in Part Plaintiff's Motion for Attorneys' Fees and Costs* [Doc. 28], filed June 3, 2016 (attached as **Exhibit "C"**); and

3.     The awarded rate is not adequate to attract counsel to these types of cases. Each of these reasons are addressed in the argument below.

In support of this Motion for Attorneys' Fees and Costs, Plaintiffs submitted the following evidence (in addition to the counsel's own declarations) justifying Mr. Holcomb's and Mr. Mac Master's requested hourly rates of $300 per hour and $450 per hour, respectively:

1.     The Declaration of Ryan Engle, a local attorney with fourteen years' experience who bills clients the reasonable rate of $350 per hour, [Doc. 124-2];

2.     The Declaration of Frederick Arensmeyer, a local attorney with 10 years' experience who bills clients the reasonable rate of $395 per hour, [Doc. 124-3];

3.     The Declaration of Joseph Rosenbaum, a local attorney with six years' experience (approximately half that of Mr. Holcomb) who bills clients the reasonable rate of $297 per hour, [Doc. 124-4];

4.     The Declaration of Kevin O'Grady, a local attorney with 18 years' experience who bills clients a minimum of $350 per hour, [Doc. 124-5];

5.     The Declaration of Brian Brazier, a local attorney with nine years' experience who bills clients a minimum of $250 per hour, [Doc. 124-6];

6.    The Declaration of Alen Kaneshiro, a local attorney with almost 11 years' experience (approximately the same as Mr. Holcomb) who bills clients the reasonable rate of $350 per hour, [Doc. 124-7]'

7.    Brazier, Arensmeyer, and O'Grady are familiar with Mr. Holcomb's work and the local market, and Mr. Brazier believes Mr. Holcomb "deserves and can command" a rate of $300 per hour while Mr. Arensmeyer and Mr. O'Grady believe $350 per hour would be appropriate, [Docs. 124-3, 124-5, 124-6];

8.    The Declaration of Peyton Hazzard, a local plumber who has been a plumber for six years and charges a minimum of $189 per hour and $250 per hour after hours with a two hour minimum, [Doc. 124-8];

9.    Mr. Holcomb is charged $400 per hour when he hires a Honolulu attorney for personal matters, [Doc. 124-10 ¶ 7];

10.   The City (since at least *three years ago*) pays its outside counsel a range of $495 per hour for senior attorneys to a minimum of $295 per hour for associates fresh out of law school, [Doc. 124-10 ¶ 58-61; 124-14]; and

11.   Numerous exhibits establishing that the cost-of-living in Honolulu is much higher than that of other jurisdictions where awarded rates are much higher. Rather than attracting counsel to these types of cases, this deters (particularly solo practitioners) from representing indigent clients in these types of cases in Hawaii, [Doc. 124-10 ¶¶ 44-56; 124-14 through 124-20].

This evidence is "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Defendants did not respond to this evidence, instead observing that Mr. Holcomb has consistently (over his objection) been awarded only $200 per hour, citing cases where work began four years ago. [Doc. 126, pp. 22-23]; *see* **Exhs "A"** and **"B"**.

Counsel (particularly Mr. Holcomb) is painfully aware that this Court distinguishes between "'the prevailing rates in the community, *i.e.*, what one might charge and collect from a client, and the prevailing rates awarded by the Court.'" **Exh. C**, pp. 12-13 (*quoting Onishi v. Redline Recovery Servs., LLC*, Civ. No. 10-00259 DAE-KSC, 2010 wl 5128723, at *2 n. 1 (D. Haw. Nov. 12, 2010), *adopted*, Civ. No. 10-00259 DAE-KSC, 2010 wl 5128720 (D. Haw. Dec. 9, 2010); and *Au v. Funding Grp., Inc.*, 933 F.Supp.2d 1264, 1275 (D. Haw. 2013) ("To ensure consistency within this district, the Court is guided by the hourly rates generally awarded in this district, not the amounts charged to clients, nor rates that appear to be outliers.")); *Harris v. Trash Man, LLC*, CIV 12-00169 HG-KSC, 2013 wl 1932715 (D. Haw. Apr. 16, 2013) *adopted*, CIV. 12-00169 HG-KSC, 2013 wl 1932710 (D. Haw. May 7, 2013) ("Not only are Hawaii's prevailing market rates considerably lower than those in California, but the *rates awarded in this district are lower still*.") (emphasis added). Yet, counsel should be paid the rate that a client would pay instead of the assigned rate. *City of Riverside v. Rivera*, 477 U.S. 561,

575-76 (1986) ("[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client …"); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("'in order to encourage able counsel to undertake FDCPA cases [or other cases based on a fee-shifting statute] it is necessary that counsel be awarded fees <u>commensurate with those which they could obtain by taking other types of cases</u>.") (emphasis added) (citations omitted).

Despite the submission of the evidence enumerated above and the fact that the rate has stagnated for at least four years, the Magistrate based the awarded rate entirely on previous awards. [Doc. 134, pp. 15-16]  The Magistrate perfunctorily dismissed all of Plaintiffs' arguments. [Doc. 134, p. 16]  Similarly, the greatly reduced rate for Mr. Mac Master was also established (with the exception discussed below) by exclusive reliance on prior awards. [Doc. 134, pp. 18-19]

The crux of the Magistrate's recommendation is as follows:  "[t]he Court will not disturb hourly rates awarded in this district without reasoning legally sufficient to warrant overruling the extensive body of law existing on prevailing attorney rates in this district." [Doc. 134, p. 17]; [*see also* Doc. 134, p. 15 ("Plaintiffs argue … that cases in this district reflect an artificial cap on attorney rates")]; **Exh. C**, pp. 12-13; *Onishi*, *supra.*; *Au*, *supra*; *Harris*, *supra.*; *Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*, 07-00007 DAE KSC, 2001 wl 2320672 (D. Haw. Aug. 10, 2007) (unpublished)

(acknowledging "maximum hourly rate" awarded for "senior attorneys").  The Ninth

Circuit has addressed a similar policy:

> District judges can certainly consider the fees awarded by other judges
> in the same locality in similar cases. But adopting a court-wide policy—
> even an informal one—of "holding the line" on fees at a certain level
> goes well beyond the discretion of the district court. One problem with
> any such policy is that it becomes difficult to revise over time, as
> economic conditions change; here the rate apparently hadn't changed
> for 10 years, and even a $50 increase in the hourly rate was considered
> a "big step ... for the court generally." Unless carefully administered
> and updated, any such policy becomes a strait-jacket. More
> fundamentally, such a policy—no matter how well intentioned or
> administered—is inconsistent with the methodology for awarding fees
> that the Supreme Court and our court has adopted. The district court's
> function is to award fees that reflect economic conditions in the district;
> it is not to "hold the line" at a particular rate, or to resist a rate because
> it would be a "big step." If the lodestar leads to an hourly rate that is
> higher than past practice, the court must award that rate without regard
> to any contrary practice.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008); *see also Bell v.*

*Clackamas County,* 341 F.3d 858, 869 (9th Cir.2003) (a district court abuses its

discretion to the extent it relies on cases decided years before the attorneys actually

rendered their services); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205,

1210-11 (9th Cir. 1986) (district court should be guided by the rate prevailing in the

community); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (the

awarded rate should reflect "the rates of attorneys practicing in the forum district").

To discount the awarded rates because litigants are indigent defeats the purpose of the fee-shifting statutes. *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) ("[t]he purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'").

In this case, the rate reduction, alone, amounts to an approximate 35% reduction of the requested fees *before* the number of hours were drastically reduced and an additional 30% "meat-axe" reduction was imposed. Plaintiffs have presented overwhelming evidence, cited above, of the amount that counsel can demand from a fee-paying client. Plaintiffs should not be required to accept than the rate they could collect from corporate wrongdoers such as Defendants. Such does not attract counsel to represent indigent clients in these cases.

Moreover, the "strait-jacket" foreseen in *Moreno* is precisely what is being imposed on counsel. The same rate, without any upward deviation whatsoever, has been awarded to Mr. Holcomb for work done four years' prior.[2] **Exhs. A – C.**

---

[2] Hawaii attorneys have only received nominal, if any, increases over the past ten years. *Robinson v. Plourde*, 717 F.Supp.2d 1092, 1097-98 (D. Haw. 2010) ("Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court . . ." attorneys' requested $300 per hour reduced to $250 and $275, citing cases finding $200 per hour reasonable for attorney with 31 years' experience in 2008, $285 reasonable for out-of-state attorney with 30 years' experience in 2010, a "prevailing rate in the community of $250 to $285" for attorneys with 20 to 30 years "general litigation" experience in 2008, and $225

*Footnote Con't

Plaintiffs submit that Mr. Holcomb deserves at least $3 per hour more than an attorney with half his experience, [Doc. 134-4 (Rosenbaum Decl.)], and $5 more than the City pays its outside counsel who are fresh out of law school, [Doc. 124-14 (Exhibit 15 to Plaintiffs' Motion)].   This is particularly true where this rate is apparently to be imposed *ad infinitum*.   Similarly, Mr. Mac Master, a senior attorney, deserves $225 less per hour than that charged by at least one senior attorney practicing in this district. *Olson v. Lui*, CIV 10-00691 ACK, 2012 wl 3686682 at *4, n. 5 (D. Haw. Aug. 27, 2012) (awarding attorney Paul Alston $450 despite his normal rate being $675 because it was not a civil rights case).

Defendants also argued that Plaintiffs' counsel has no experience "in wage and hour law."[1]   [Doc. 126, pp. 5-6]  As to Mr. Mac Master, the Magistrate found:

> none of the claims asserted in the instant case involve medical malpractice, criminal defense litigation, or Hawai'i state discrimination claims.   Second, Mr. MacMaster provides only one FLSA and unpaid wage litigation case in which he was the attorney of record as evidence that he is experienced in wage and hour litigation.[3]

---

reasonable for attorney with 35 years of experience in 2008) *Sam K. v. Dep't of Educ., Hawaii*, CV 12-00355 ACK-BMK, 2013 WL 1856069 (D. Haw. Apr. 30, 2013), *adopted,* CIV. 12-00355 ACK, 2013 WL 3071317 (D. Haw. June 17, 2013) (request of $375 per hour found unreasonable and reduced to $275 based on that attorneys' previous award of $275 per hour five years prior, and another attorney having been awarded $300 per hour in similar cases).

[3] This observation underscores the effect of the awarded rate, *i.e.*, that Mr. Mac Master is encouraged to represent medical malpractice plaintiffs, state discrimination claimants, or criminal defendants rather than victims of wage and hour violations, despite the contrary congressional intent. *See Fegley*, *supra*.

[Doc. 134, p. 18]  The Magistrate reduced Mr. Mac Master's rate, in part, "based on Mr. Mac Master's limited experience in FLSA and unpaid wage litigation."  *Id*.

The relevance of the number of wage and hour claims handled should not be used to reduce a requested rate that other attorneys readily demand in other types of cases. *See Camacho*, 523 F.3d at 981.  Should counsel, for example, receive a reduction in the hourly rate because this is the first limousine company that counsel has sued or because a specific statutory claim also implicates a unique tort?  These inquiries diminish rather than promote the purpose of fee-shifting statutes.

Moreover, Mr. Mac Master's "limited role" in this litigation should not result in a rate reduction.  [*See* Doc. 134, p. 18]  Had he played a more prominent role, he would be subjected to a deduction because Mr. Holcomb could have performed the work for less.  Defendants cited such a case in their Response.  [Doc. 124, p. 23 (*citing Knickerbocker v. Corinthian Colleges*, 2014 U.S. Dist. LEXIS 111733 (W.D. Wash. Aug. 12, 2014) ("The legal services required by this motion could have been rendered by attorneys with less experience (and lower billing rates) … and in significantly less time.")] Plaintiffs object to the reduction in the requested hourly rates.  This Court should award a rate commensurate with the rates established by the evidence submitted in this case.

## B.  Time for Retainer Agreements

The Magistrate deducted the entirety of hours spent on drafting appropriate client agreements and conflict waivers for the multiple clients involved in this case. [Doc. 134, pp. 21-22]  Plaintiffs submit that those hours absolutely contribute to the litigation as, absent a *pro se* litigant (which fee-shifting statutes are designed to *discourage*, *see Kay v. Ehrler*, 499 U.S. 432, 435 (1991)),  there could be no litigation without an attorney-client relationship.  Moreover, the risk of conflict between the multiple Plaintiffs and potential plaintiffs was substantial.  A properly worded contract and conflict waiver was an absolute necessity and required legal research, drafting, discussion and other work.  Plaintiffs submit that it is improper to simply categorize this time as non-compensable time that should simply be "subsumed" in counsel's overhead.   Plaintiffs object and request this Court compensate counsel (7.3 hours for Mr. Holcomb and 1 hour for Mr. Mac Master) for the reasonable time spent working on these agreements.  [*See* Doc. 134, pp. 21-22]

## C.  Time for the phone call to Disciplinary Counsel

Mr. Holcomb spent .5 hours discussing, with Hawaii's Office of Disciplinary Counsel, a potential conflict between a former client who Defendants had named as a 30(b)(6) designee.  The Magistrate simply "agreed" with Defendants that this call was "improper" and "did not advance Plaintiffs' case."  [Doc. 134, p. 22 (recommending the .5 hour deduction)]  Such a ruling discourages counsel for

Plaintiffs in fee-shifting cases from ensuring that ethical obligations are met. Moreover, Defendants named the 30(b)(6) designee who *testified* at the deposition, which the Magistrate specifically and correctly found did advance the litigation. [Doc. 134, pp. 37-38]  This consultation was necessary and prudent, "advanced the case," and was not "improper."  Counsel's only other option would have been to withdraw or risk a disciplinary sanction which this Court might then use to further lower counsel's rate.  *See Harris v. Trash Man, LLC*, CIV 12-00169 HG-KSC, 2013 WL 1932715 (D. Haw. Apr. 16, 2015) (finding attorney had a "blemished reputation," having been publicly reprimanded).  Plaintiffs object to this deduction.

### D.  Hours should not be deducted for "duplicative" billing.

Plaintiffs object to the bright-line "general rule" that counsel should not be compensated for "attending:  (1) a meeting between co-counsel; or (2) a client meeting." [Doc. 134, p. 23]  Application of such a rule creates a presumption against compensation rather than the analysis that should occur, *i.e.*, "[c]ourts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication."  *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004).  Accordingly, Plaintiffs object to those deductions.  [Doc. 134, pp. 23-26]

Further, although this "rule" is persistently applied in this district, Plaintiffs are aware of <u>no instance</u> where only the attorney with the lowest hourly rate is

compensated.  Neither Defendants nor the Magistrate cited a single example of such a ruling.  [*See* Docs. 126, pp. 23-24 (citing only a Washington case where the court speculated that the work could have been completed by an attorney with less experience and in less time); 134, pp. 23-24]  If such a rule is to be applied, the rule should not be further exacerbated to benefit the Defendants.[4]  There is no dispute as to whether Mr. Mac Master actually attended and participated as reflected in his timesheets.  And, despite the fact that Mr. Holcomb completed most of the work in this case, counsel should at least be awarded the higher of the hourly rates leaving counsel free to disperse any award amongst themselves as they are more than capable of agreeing to do.  Plaintiffs object.  Should this Court adopt the recommended deductions for "duplicative" work, Plaintiffs request (at least) compensation at Mr. Mac Master's rate for the 15.7 hours deducted from Mr. Mac Master's compensation.  [Doc. 134, pp. 24-28]

Among the substantial deductions from Mr. Mac Master's award for "duplicative" work, which alone account for an additional 31% of Mr. Mac Master's requested compensation on top of the extraordinary rate reduction, [*See* Doc. 134, p. 13 (50.3 hours requested)], were the following, to which Plaintiffs object:

---

[4] Defendants' benefit was twofold because Mr. Holcomb had designated some of the time worked as "NO CHARGE" hours whereas Mr. Mac Master had not. Accordingly, not only did Defendants receive the unprecedented benefit of paying the lower rate but also an additional 1.6 hour reduction in the total hours requested. [*See* Doc. 134, p. 24 (citing Plaintiffs' timesheets, Docs. 124-11, 124-21)]

- 10/22/14 Strategy Meeting between counsel (.2) hours:  It is reasonable to expend a mere 12 minutes in a meeting between counsel at the inception of the case to discuss the potential facts and how to proceed.  [Doc. 134, p. 23];

- 10/23/14 Meeting with Plaintiff Pelayo (1.7 hours):  It is patently reasonable for both lawyers who will represent a client to expend 1.7 hours in an initial meeting with said client to discuss the case and issues.  How else could the attorneys who the client is retaining to represent him possibly know the issues or facts of the case or the client know who is representing him? [Doc. 134, p. 23];

- 10/28/14 Meeting with Plaintiff Pelayo (1.0 hours):  It is patently reasonable for both lawyers to again meet with the client five days after the initial consultation, after reviewing the evidence and issues in the case, for a follow-up meeting for clarification.  [Doc. 134, p. 23];

The Magistrate even deducted all of Mr. Mac Master's hours spent attending and preparing for:  the Settlement Conferences (8/27/15 – 1.5 hours, 11/12/15 – 1.2 hours, and 1/15/16 – 1.5 hours); the 30(b)(6) Deposition (6 hours);[5] and for attending all but one hearing (6/5/15 hearing on Motion for Leave to File SAC –1.2 hours,

---

[5] The Magistrate also found that Mr. Mac Master "block-billed" for the Deposition. [Doc. 134, p. 26]  Even if true, counsel is aware of no circumstance where all of the hours in the block-billed entry are deducted.  Historically, this Court deducts a small percentage from specific "block-billed" entries.  Accordingly, Plaintiffs object and, should this Court find that the entry was "block-billed," request that this Court deduct no more than .6 hours from the entry.

9/4/15 hearing on Motion to Dismiss (1.4 hours)) [Doc. 134, pp. 24-29]  Plaintiffs

object to each of these deductions.  Plaintiffs deserve full compensation for this work

completed by Mr. Mac Master and Mr. Holcomb.   As the Eastern District of

California has observed:

> Numerous courts have recognized that staffing multiple attorneys on a single task may improve a party's chance of success in litigation. *See, e.g., PSM Holding Corp. v. Nat'l Farm Fin. Corp.,* 743 F.Supp.2d 1136, 1157 (C.D.Cal.2010) ("[D]ivision of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings. Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law." (citation and internal quotation marks omitted)); *cf. United States v. City & County of San Francisco,* 748 F.Supp. 1416, 1421 (N.D.Cal.1990) (noting that "the presence of several attorneys at strategy sessions for complex civil rights class actions may be crucial to the case").
>
> Likewise, although defendants object to several time entries spent on office conferences, "[a] conference with only one participant is no longer a conference," and "[t]he upshot of accepting [this] view would be to hold that all conferencing by [plaintiffs'] attorneys was excessive and duplicative." *Prison Legal News v. Schwarznegger,* 561 F.Supp.2d 1095, 1103–04 (N.D.Cal.2008), *aff'd,* 608 F.3d 446 (9th Cir.2010) (citations and internal quotation marks omitted). Absent any specific evidence that plaintiffs' decision to staff multiple attorneys on particular tasks was excessive, the court will not reduce the billed hours of plaintiffs' counsel on this basis. *See Moreno,* 534 F.3d at 1114 (noting that the 'district court may not set the fee based on speculation as to how other firms would have staffed the case').

*DeCampo v. Potts*, CIV. 2:06-1283 WBS, 2014 WL 788429 at *3 (E.D. Cal. Feb.

25, 2014) (unpublished). Presumably for the reasons set forth in *DeCampo*,

Defendants had no less than two and, on at least one occasion, <u>three</u> attorneys representing them.[6]

The Magistrate requires Plaintiffs to show a "distinct contribution" of each attorney before compensation would be awarded to the "duplicative" attorney. [Doc. 134, p. 25]; *Compare Reed*, 388 F.3d at 1286-87.   While Mr. Mac Master did specifically contribute in each of "duplicative" events, even if he had not, it *may have been* necessary for him to assist.   This is the specific role that the *Reed* Court provided as an example of when counsel *should be* compensated:

> For example, if lawyers merely watch so that they can learn and use their knowledge in subsequent cases, their time should not be billed. But if, for example, they are there because their assistance is or may be needed by the lawyer arguing the case, as when a judge asks "where is that in the record," and one lawyer must frantically flip through pages and find the reference to hand to the lawyer arguing, then the assistance is most definitely necessary. Also, for example, a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later.

*Reed*, 388 F.3d at 1287.   Mr. Mac Master was not present merely to learn.   Mr. Mac Master was present to contribute and assist Mr. Holcomb, which he did during each of these events.   Plaintiffs object.

---

[6] The Magistrate found that Defendants had two attorneys present at the 12/10/15 hearing. [Doc. 134, p. 29]  Defendants had <u>three</u> attorneys present at the 12/10/15 hearing.  Mr. Harris was in the gallery.  Counsel recollects that Defendants had at least two attorneys present at each hearing.  Moreover, with the exception of the 30(b)(6) deposition and a few meet and confers (which necessitated only one defense attorney due to scheduling conflicts with another defense attorney) at least two defense attorneys participated in each event throughout this litigation.

## E.  Clerical Entries

The Magistrate deducted 24.2 hours for tasks deemed "clerical" solely because he found that "[i]t is not customary in Hawai'i 'to bill for purely clerical or secretarial work separately from attorneys' services" because "[c]lerical costs are part of an attorney's overhead and are reflected in the charged hourly rate."  [Doc. 134, pp. 29-30 (finding counsel had been "warned" about seeking compensation for so-called "clerical" tasks in another case for which counsel was also not compensated after a reduction in the hourly rate)]  Here, insofar as these tasks could have been reflected in the hourly rate, they were not in this case.  The conglomerate hourly rate was reduced by more 35%.  Counsel should not have to absorb this out-of-pocket money when the fee is reduced 35%.  These tasks were necessary and, in fact, required by applicable rules, law or the Court itself.  This is particularly burdensome for solo practitioners, such as the instant attorneys, who not only must often perform the tasks and requested only the paralegal rate as compensation for these required tasks.  Plaintiffs object to being required to absorb this required time when counsel's rate is already reduced by a third.

Further, Plaintiffs object to the Magistrate's twofold reduction of the time spent calculating Mr. Pelayo's hours.  [Doc. 134, p. 31]  Counsel spent only 7.1 hours calculating this time by analyzing daily timesheets and biweekly paystubs, which then had to be calculated per workweek.  *Id*.  The Magistrate not only

arbitrarily found that only 3.7 hours of this necessary time was compensable but also then reduced the rate for that 3.7 hours to $85 per hour.  It is plainly reasonable and even necessary for an attorney to calculate damages and 7.1 hours spent doing so in this case is patently reasonable.  Plaintiffs object.

### F.  Counsel did not spend excessive time on this case.

The Magistrate recommends drastic deductions for work completed in this case because the hours spent completing that work were deemed "excessive."  [Doc. 134, pp. 32-29]  Specifically, the Magistrate recommended a 16.9 hour reduction (approximately 60%) for time spent working on the Complaints, [Doc. 134, p. 33-35]; 6.7 hours (50%) for time spent on the Motion to Compel, [Doc. 134, pp. 35-36]; 15.5 hours and 5.5 hours, respectively, (50%) for time spent on the fees motion and Reply, [Doc. 134, pp. 36-37]; 9.7 hours (50%) for time spent preparing for the 30(b)(6) deposition, [Doc. 134, p. 37]; and 4 hours (43%) for time spent on the Supplemental Brief that the Magistrate ordered the parties to file, [Doc. 134, pp. 38-39].  Plaintiffs object to each of these deductions.

The Magistrate ignored the fact that Defendants' conduct caused the hours expended.  Not only did Defendants tenaciously litigate at every opportunity, but (worse) Defendants persistently refused to cooperate in discovery and settlement negotiations throughout the entire year of litigation.  Perhaps most egregiously, Defendants <u>concealed important information from their own lawyers</u>:

1.      Despite the undersigned having <u>specifically inquired as to the existence of arbitration agreements since first meeting with defense counsel, Defendants withheld the applicable arbitration agreements even from their own lawyers until the filing of their Motion for Summary Judgment in October.</u>  [Doc. 86-6 ¶ 7; *See* Doc. 112, p. 29 ("*counsel* disclosed the arbitration agreements and filed the instant motion *promptly upon becoming aware of their existence*," finding that sanctions were not warranted) (emphasis added)]  <u>The agreements were signed and in Defendants' possession since February 7, 2012</u>.  [Doc. 66-1, pp. 6, 12, 19];

2.      Defendants falsely informed their lawyers that Plaintiff Boreliz did not work for Platinum during the applicable time period. [Doc. 124-10 ¶ 21]; **Exh. A**.  Thus, <u>Defendants withheld all records pertaining to Mr. Boreliz even from their own lawyers and/or did not disclose the documents until the filing of their Motion for Summary Judgment in October.</u>  [Doc. 66-9];

3.      Despite Plaintiffs' <u>March 20, 2015 request</u> for payroll and time records, Defendants refused to provide any discovery until July 7, 2015.  Then, Defendants included no payroll records except for the period *after* the Department of Labor began its investigation of Defendants – an investigation which caused Platinum to begin paying overtime wages.  [Docs. 78-2 ¶¶ 7-11, 124-10, p. 8 n. 1]  Thus, <u>Defendants apparently ciphered through their payroll records and deliberately only produced those that reflected favorably upon Defendants' labor practices;</u>

4.    In 2014, the DoL, <u>relying on documents produced to it by Defendants</u>, investigated Defendants.  Included in the DoL response to Plaintiffs' FOIA is the (albeit redacted) "Contract Agreement" signed by Mr. Manankil on November 23, 2013.  [Doc. 133-2]  The unredacted portions of this "Contract Agreement" <u>are identical</u> to the "Contract Agreement" signed by Jonathan DeMotta, which Defendants erroneously filed as Exhibit "A" to their Motion for Partial Summary Judgment.  [Doc. 66-1, p. 13]  The sole difference in the two documents is the addition of Paragraph 16, <u>which is a specific written memorialization of Defendants' unlawful overtime policy</u>:  "any overtime hours will not be subject to overtime pay …"  [Doc. 133-2 ¶ 16]  Plaintiffs had requested these documents in this case from Defendants as early as March 20, 2015.  [Doc. 78-1, pp.1-2]  After extraordinary attempts to obtain the discovery from Defendants, and after Defendants finally decided that it was appropriate to disclose any discovery at all, [*see* Doc. 78-1], on November 2, 2015 Plaintiffs filed a Motion to Compel <u>specifically seeking the "Contract Agreement" signed by Mr. Manankil</u>.  [Docs. 78, 78-1 pp. 6-8]  Yet, in response, Defendants claimed that they had "<u>located no 'Contract Agreement' or 'Standard Operating Procedures' signed by Manankil and do not believe those exist</u>."  [Doc. 92, p. 2]  Defendants' counsel's declaration states:  "Defendants have not provided any 'Contract Agreement' or 'Standard Operating Procedures' signed by Manankil and <u>have confirmed Defendants' belief these documents do not exist</u>."

[Doc. 92-1 ¶ 2]   Even after the Motion to Compel was granted, [Doc. 101], Defendants disclosed the Employment Agreement that Defendants had previously filed (but not disclosed) as an attachment to their Motion for Partial Summary Judgment.  [Doc. 66-1, pp. 1-6]   <u>No "Contract Agreement" was ever disclosed despite Defendants having produced the requested document to the Department of Labor in 2014</u>.  Counsel only discovered Defendants' deception after reviewing the result of Plaintiffs' FOIA request to the DoL.  [Doc. 133-1 ¶¶ 11-14]

Hours should not be reduced as "excessive." Defendants should pay the attorneys' fees resulting from their litigation tactics, and obstructive, deceptive conduct.  The United States Supreme Court has addressed similar facts and found that "[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580, n. 11 (1986).  The hours resulting from Defendants' tactics should not be reduced.  Still, each of the deductions is discussed below.

## SAC

The Magistrate found that work on the SAC was excessive *despite having added 28 pages of detailed specific factual allegations* that were not in previous amendments.[7]  [Doc. 134, pp. 34-35]  Ultimately, placing significant emphasis on

---

[7] Defendants initially complained that Plaintiffs should have included the specific details in the allegations of the original or First Amended Complaint.  [Doc. 126, p.
*Footnote Con't

the number of counts involved rather than the 28 pages of detailed factual allegations, the Magistrate reduced the 41.9 hours spent on the Complaint, FAC, and SAC to a mere 25 hours, a 60% reduction. *Id*.

The Ninth Circuit specifically found "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112. The Magistrate distinguished *Moreno* because this was a "fee-shifting" case. [Doc. 134, pp. 33-34] The language relied on from *Moreno*, above, is not "inapposite" to this case. The Ninth Circuit plainly meant that counsel should not be penalized for being thorough because Plaintiffs necessarily must prevail in order to be paid at all.

Moreover, it is particularly egregious to deduct 60% of the award for time spent on the Complaint because the SAC had "too much detail." The SAC was drafted on the heels of Defendants' Motion to Dismiss in which the Defendants

---

16] However, Defendants flatly refused to cooperate and comply with the rules in Discovery, leaving Plaintiffs without the information to more specifically allege their claims. [Doc. 124-10, ¶¶ 8-15, 21-23] The Ninth Circuit specifically declined to make "the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA.  After all, most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014) (emphasis added).  Once minimal information was made available, Plaintiffs promptly included specific details as insisted by Defendants. [*See* Docs. 9, 43]  Yet, Defendants complained that the SAC contains too much detail. [Doc. 126, pp. 16-17]

claimed that the Complaint must allege specific overtime and/or off-the-clock time in any given workweek to provide notice of the specific violations. [Doc. 9] Although Defendants' argument that the Complaint should be dismissed for lack of plausibility was tenuous, [*see* Doc. 20, pp. 2-3], providing notice of specific examples of Defendants' misconduct is precisely what Plaintiffs accomplished with the SAC. [Doc. 43] Defendants' argument as to the necessary detail required to meet the plausibility standard in their response to the fees motion departed dramatically from their argument in their first Motion to Dismiss. [Docs. 9, 126, pp. 16-17]

Perhaps most importantly, other than a handwritten calendar that Defendants had apparently created from Mr. Pelayo's timesheets (timesheets which were not disclosed until *July*), Defendants refused to provide *any* discovery whatsoever to Plaintiffs, even in the face of a formal Request for Production of Documents,[8] because Defendants unilaterally decided Plaintiffs' Complaint failed to meet the plausibility standard. [Doc. 124-1, p. 11; 124-10 ¶¶ 13-15, 21] Thus, in an effort to save time for the parties and the Court, Plaintiffs used the paystubs in Plaintiffs' possession and the calendar to draft detailed allegations. [Doc. 124-10, pp. 14-15]

It is not unreasonable for counsel to spend 41.9 hours drafting three complaints with varying Plaintiffs, revising the claims, and comparing calendars of

---

[8] Plaintiffs respectfully submit that counsel exhibited extraordinary restraint in this case as to the accrual of hours, particularly when declining to file multiple Motions to Compel Discovery and Sanctions in light of Defendants' conduct in this matter.

workweeks with bi-weekly payroll stubs to draft allegations that Defendants had insisted be alleged.   The accrual of these hours certainly was not the result of "churning." [*See* Doc. 134, p. 34]  The focus should not be on the number of claims in each amendment.  The Magistrate's recommendation leaves Plaintiffs penalized where detailed allegations are drafted and open to plausibility challenges where they do not.  Such a ruling does not attract counsel to these types of cases.

## Motion to Compel

Correctly finding that "Defendants forced Plaintiffs to file the Motion to Compel," the Magistrate nevertheless reduced time spent on the Motion to Compel by 50%.  [Doc. 134, p. 36]  The reason was that eight pages of the Motion were "devoted entirely to introductory and background information." *Id*.  Counsel has never before seen a deduction because a Motion provided introductory and background material too carefully. *See Moreno*, 534 F.3d at 1112.  A movant should inform the Court of the basis of the motion and the facts that led to the filing of the Motion. [*See* Doc. 78-1, pp. 1-8]  Moreover, only 1.8 hours were spent drafting the factual background, and only 3.9 hours could be indirectly attributed to such drafting.  [Doc. 124-11, p. 17 (10/29/15 and 10/30/15 entries)] Plaintiffs object and should be fully compensated for the mere 13.3 hours spent on the Motion, particularly in light of the procedural history set forth in the Motion.

**Attorneys' Fees Motion**

The Magistrate recommends a 50% deduction from the time spent drafting the fees motion and reply because he found that time was attributed to copying or "rehashing" arguments related to the hourly rate and which counsel had raised twice before in other cases. [Doc. 134, pp. 36-37]  Yet, 14 pages of the Memorandum were devoted to the Factual Background and an exhaustive review of the Procedural History, necessitated by the fact that it is Plaintiffs' burden to justify the fees. [Doc. 124-1, pp. 1-14]  One page was devoted to observing that the settlement was "reasonable," which the Magistrate nevertheless required the parties to brief again (and deducted even more hours from that work). *Id*. at 15.  Three pages were devoted to specific costs incurred in this case.  *Id*. at 15-18.  One page was devoted to the lodestar analysis. *Id*. at 18-19.  Two pages were devoted to demonstrating that the rate now awarded by the Magistrate is the same rate which counsel was awarded for work (performed in the very cases relied on by the Magistrate to find that counsel duplicated work on this motion), a rate which was too low then. *Id*. 29-30.  Only 10 pages could be attributed to "rehashing." *Id*. at 19-29.

*__Hours spent on these 10 pages were not even billed.__*  Mr. Holcomb specifically itemized his timesheet to include specific time spent on each sections of the brief to avoid being penalized for "block-billing." [Doc. 124-11, pp. 19-20] *__Mr.__*

*Holcomb did not bill **at all** for the sections regarding the lodestar or the hourly rate*.[9]

*Id*.   Further, <u>only 1.5 hours of the Reply</u>, which was directly responsive to Defendants' arguments and not "cut and paste", was spent on the "Hourly rate" section.  [Doc. 128-2, p. 4 ¶ 9 (March 20, 2016 Entry)]  Thus, the 50% deduction is attributed to work for which counsel did not even bill.  Moreover, counsel submitted a total of <u>seven declarations</u>, detailed timesheets (Mr. Holcomb's was 20 pages), and counsel's own detailed Declarations, all of which were not submitted in the prior cases.  [Docs. 124-2 through 124-13]  Had counsel nevertheless billed for "rehashed" work, the Ninth Circuit has specifically rejected the Magistrate's analysis:

> When a case goes on for many years, a lot of legal work product will grow stale; <u>a competent lawyer won't rely entirely on last year's, or even last month's, research</u>:  Cases are decided; statutes are enacted; regulations are promulgated and amended.  <u>A lawyer also needs to get up to speed with the research previously performed</u>.  All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time.  … One certainly expects *some* degree of duplication as an inherent part of the process.  There is no reason why the lawyer should perform this necessary work for free.

*Moreno*, 534 F.3d at 1112.

Plaintiffs object to this deduction and counsel deserves a full award.

---

[9] The sole entry that could possibly be attributed, in part, to "re-hashing" the argument is the 2/18/16 entry for 1.6 hours spent "Cont[inuing to] Draft Fees Motion."  [Doc. 124-11, p. 20]  Even if this entire time were spent "re-hashing" the previous argument, this nominal amount of time is plainly reasonable.  *See Moreno*, 534 F.2d at 1112.

**Rule 30(b)(6) Deposition**

The Magistrate correctly found that it was reasonable for Plaintiffs to depose Defendants' 30(b)(6) witnesses.  [Doc. 134, pp. 37-38]  However, the Magistrate deducted 9.7 (50%) of the 19.4 hours spent preparing for a (more than) seven hour deposition involving multiple exhibits, 35 topics (that had been particularized following Defendants' objection to each of the topics [Doc. 124-10, ¶ 24]), two witnesses between whom Defendants divided the topics, two transcripts of 180 and 90 pages, respectively, and 16 exhibits taken from thousands of pages of discovery and the record, which at the time consisted of at least 110 entries with many of those entries containing multiple attachments.  The Magistrate found that 14.6 hours were spent compiling and organizing the outline(s) of questions and exhibits.  Respectfully, counsel knows of no other way to prepare for such a deposition other than to outline and organize the questions and weed through the voluminous record and discovery to find and compile the important documents to present to the witness.  Spending 19.4 hours accomplishing these tasks is not unreasonable and was necessary to an effective deposition.  Plaintiffs object to this deduction.

**Supplemental Brief**

The Magistrate notes that 5 pages of the Supplemental Brief, [Doc. 133] was "unrelated to the Court's Order to provide supplemental briefing."  Plaintiffs object to the recommended 4 hour reduction.  [Doc. 134, pp. 38-39]  While it is true that 5

pages of the brief was devoted to citing yet another newfound example of how the Defendants' conduct exacerbated the fees in this case, this is important information that should have at least been considered when deciding to reduce the award even further, *i.e.*, the 30% meat axe reduction, discussed below.  Plaintiffs object.

### G.  The award should not be further reduced by 30%

After reducing the rate by 35%, almost all hours spent by Mr. Mac Master in each proceeding, meeting, and discussion, and all hours spent on almost every motion and the deposition preparation by approximately 50%, the Magistrate recommends an additional 30% "meat-axe" reduction. [Doc. 134, pp. 40-42]  Thus, the total award ($51,109.10) is a mere 36% of the amount requested ($141,347).

The Magistrate found that "[n]o reasonable person would pay a lawyer $141,347.00 or even $73,013.00 to win $5,575.00." {Doc. 134, p. 41]  The precise purpose of fee-shifting statutes is to ensure that indigents can redress wrongs despite their inability to hire counsel and their damages insufficient for a contingency:

> The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.' Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here 'encourage[s] the vindication of congressionally identified policies and rights.' *Id.* at 503. Indeed, we have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'

*Fegley*, 19 F.3d at 1134-35 (citations omitted).  This Court should instead "focus on whether the hours spent in litigation were reasonably necessary to obtain the relief

that was ultimately obtained." *Velez v. Wynne*, 220 Fed. Appx. 512, 513 (9th Cir. 2007).   Here, the only time that could be attributed to "unsuccessful" claims is the time spent on attempting to certify the collective, <u>which was completely removed from Mr. Holcomb's timesheet</u>.   [Docs. 124-10, ¶ 4; 124-11]   As shown above, the Defendants tenaciously litigated at every opportunity, and went as far as to hide evidence from their own attorneys. *Rivera*, 477 U.S. at 580, n. 11 ("[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiff in response.").   Counsel could not have performed only 2/3 of the work and obtained vindication for Plaintiffs.   [*See* Doc. 124-10, ¶¶ 6-25]   Mr. Boreliz received 100% of all the money he had ever requested. Mr. Pelayo received almost five times the amount of Defendants' sole offer in this yearlong litigation. [*see* Docs. 112, p. 9; 124-12] Defendants have not shown "rare and exceptional circumstances" for adjusting the lodestar.   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).   Plaintiffs object.

### III.  CONCLUSION

Plaintiffs request that this Court modify the Report and Recommendation consistent with the objections above and that counsel receive a full award.   Plaintiffs further request that Mr. Holcomb receive an additional $5,151.83 for time spent on these objections as set forth in the attached Declaration.

DATED:  Honolulu, Hawaii; June 20, 2016.

*s/Richard L. Holcomb*
Richard L. Holcomb 9177