RICHARD L HOLCOMB (HI Bar No. 9177)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 805
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com

TIMOTHY MAC MASTER (HI Bar No. 5085)
Attorney at Law
1088 Bishop Street
Suite 209
Honolulu, HI 96813
Telephone: (808) 591-8080

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ARSENIO PELAYO, , and | CASE NO. 1:15-cv-00023 DKW KJM |
| BRANDON BORELIZ | |
| Plaintiffs, | PLAINTIFFS' OBJECTIONS TO ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL ANSWERS TO PLAINTIFFS' FIRST INTERRROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS PURSUANT TO FED.R.CIV.P., RULE 69(a)(2) OR, ALTERNATIVELY, THE POSTING OF A SUPERSEDEAS BOND AND FOR SANCTIONS, ENTERED OCTOBER 19, 2017 AS *DKT*. **166**; DECLARATION OF RICHARD L. HOLCOMB; EXHIBITS "A" THROUGH "C"; CERTIFICATE OF SERVICE |
| vs. | |
| PLATINUM LIMOUSINE SERVICES, INC., | |
| KURT TSUNEYOSHI, | |
| and | |
| DOES 1 through 10, | |
| Defendants. | |
| _____ | |

## TABLE OF CONTENTS

**A. Identification of the Specific Portion of the Order
to which Plaintiffs Object** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**B. Standard of Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**C. Statement of Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**D. Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**E. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

### Reported Cases

*David v. Hooker, Ltd.*, 560 F.2d 412 (9th Cir. 1977) . . . . . . . . . . . . . . . . 15

*Falstaff Brewing Corp. v. Miller Brewing Co.,*
702 F.2d 770 (9th Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . 15

*Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994),
*as amended* (July 25, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Lew v. Kona Hosp.*, 754 F.2d 1420 (9th Cir. 1985) . . . . . . . . . . . . . . . . . .19

*Marquis v. Chrysler Corp.,* 577 F.2d 624 (9th Cir.1978) . . . . . . . . . . . . . 19

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) . . . . . . . . . 14

*Reygo Pac. Corp. v. Johnston Pump Co.,*
680 F.2d 647 (9th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Societe Internationale v. Rogers*, 357 U.S. 197 (1958) . . . . . . . . . . . . . . . 19

**Unreported Cases and Dispositions**

*Croomes v. Stream Glob. Servs.--AZ, Inc.,*
*No.* CV11-0141-PHX-JAT,
2012 WL 748307 (D. Ariz. Mar. 8, 2012) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Marine Lumber Co., v. Precision Moving & Storage, Inc.,*
No. CV 16-00365 LEK-RLP,
2017 WL 4678470 (D. Haw. Oct. 17, 2017) . . . . . . . . . . . . . . . . . . . . . . . 2-3, 14,
                                                                                    21-22

**Statutes, Rules, and Other Authorities**

Fed. R. Civ. P., Rule 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

District Court Rules for the District of Hawaii, LR 72.9 . . . . . . . . . . . . . 3

**PLAINTIFFS' OBJECTIONS TO ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION TO COMPEL ANSWERS
TO PLAINTIFFS' FIRST INTERROGATORIES
AND REQUEST FOR PRODUCTION OF DOCUMENTS
PURSUANT TO FED. R. CIV. P., RULE 69(a)(2) OR, ALTERNATIVELY,
THE POSTING OF A SUPERSEDEAS BOND AND FOR SANCTIONS
ENTERED OCTOBER 19, 2017 AS *DKT*. 166**

COME NOW the Plaintiffs pursuant to 28 U.S.C. § 636(b), Fed. R. Civ. P.,
Rules 59(a) and/or 72(a) of the Federal Rules of Civil Procedure, and Local Rules
72.9 and 74.2 of the Local Rules of this Court and objects to the Magistrate's
Order entered October 19, 2017 as *Dkt*. 166 (hereinafter "the Order").

**A. Identification of the Specific Portion of the Order to which Plaintiffs Object**

Pursuant to Local Rule 74.2, Plaintiffs identify the following portion of the
Order to which Plaintiffs object:

> Finally, Plaintiffs have requested fees and costs associated with this
> Motion.   Federal Rules of Civil Procedure 37(a)(5)(A) requires the
> payment of expenses if a Motion to Compel is granted unless "other
> circumstances make an award of expenses unjust." Fed. R. Civ. Proc.,
> Rule 37(a)(5)(A)(iii). The Court finds that this case is being driven
> almost entirely by attorneys' fees. The Court finds that a further award
> of attorneys' fees and costs would therefore be unjust under the
> circumstances, and declines to award them to Plaintiff.

*Dkt*. 166, p. 4 (Exhibit C).

Further, because of this finding, the Magistrate did not review the
supplement Plaintiffs filed on October 4, 2017 as *Dkt*. 164.  *Id*.

## B.  Standard of Review

This district court has stated:

Pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and LR 74.1, any party may appeal to the district court any pretrial nondispositive matter determined by a magistrate judge. Such an order may be reversed by the district court judge only when it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); LR 74.1. An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." Akey v. Placer Cty., 2017 WL 1831944, at *10 (E.D. Cal. May 8, 2017) (citation and quotation marks omitted). And an order is "clearly erroneous" if, after review, the court has a "definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001); Fisher v. Tucson Unified Sch. Dist., 652 F.3d 1131, 1136 (9th Cir. 2011); Cochran v. Aguirre, 2017 WL 2505230, at *1 (E.D. Cal. June 9, 2017) (citing cases). "[R]eview under the 'clearly erroneous' standard is significantly deferential." Concrete Pipe & Prods. v. Constr. Laborers Pension Tr., 508 U.S. 602, 623 (1993). Thus, the district court "may not simply substitute its judgment for that of the deciding court." Grimes v. City & Cty. of S.F., 951 F.2d 236, 241 (9th Cir. 1991); Cochran, 2017 WL 2505230, at *1.

" 'Pretrial orders of a magistrate' judge 'under § 636(b)(1)(A) ... are not subject to a de novo determination.' " Hypolite v. Zamora, 2017 WL 68113, at *1 (E.D. Cal. Jan. 6, 2017) (quoting Merritt v. Int'l Bhd. of Boilermakers, 649 F.2d 1013, 1017 (5th Cir. 1981)). Consideration by the reviewing court of new evidence, therefore, is not permitted. United States ex rel. Liotine v. CDW Gov't, Inc., 2013 WL 1611427, at *1 (S.D. Ill. Apr. 15, 2013) ("If the district court allowed new evidence [on review of a magistrate judge's non-dispositive order], it would essentially be conducting an impermissible de novo review of the order."); cf. United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) (determining that "a district court has discretion, but is not required, to consider evidence presented for the first time" in a de novo review of a magistrate judge's dispositive recommendation).

*Marine Lumber Co., v. Precision Moving & Storage, Inc.*, No. CV 16-00365 LEK-RLP, 2017 WL 4678470, at *3 (D. Haw. Oct. 17, 2017) (*quoting McAllister v. Adecco USA Inc.*, Civ. No. 16-00447 JMS-KJM, 2017 WL 2818198, at *2 (D. Hawai'i June 29, 2017)).

> Local Rule 72.9 of the Local Rules of this Court states:

> Unless otherwise ordered, a post-verdict or post-judgment motion for sanctions shall automatically be referred to the magistrate judge assigned to the case in accordance with 28 U.S.C. § 636(b)(3). The magistrate judge shall submit to a district judge findings and recommendations. The procedures for adjudicating such a motion shall be identical to those set forth in LR74.2.

Accordingly, these Objections should be resolved in the same manner as objections to pretrial orders.

## C.  Statement of the Facts

On or about January 27, 2016, this matter was settled.   The settlement agreement appears in this record as Doc. 124-12.

In the Settlement Agreement, the parties agreed that the issue of Attorneys' fees and costs would be submitted to this Court for determination.   Specifically, Plaintiffs would apply for Attorneys' Fees and Costs.  [Doc. 124-12 ¶ 2(b)]

In compliance with the terms of that agreement, Plaintiffs submitted their application for fees and costs on February 22, 2016.   [Doc. 124]  Defendants responded to the application March 7, 2016.   [Doc. 126]  Plaintiffs replied on March 21, 2016.  [Doc. 128]

After seeking clarification as to the fairness of the settlement, [*see* Doc. 131], on June 6, 2016, the Magistrate issued a Report and Recommendation as to the amount of fees and costs that should be awarded in this matter. [Doc. 134] Both parties timely objected, [*see* Docs. 135-36], and then timely responded to the adverse party's objections, [*see* Docs. 137-38].

On September 27, 2016, this Court issued its final order on the issue of fees and costs, awarding Plaintiffs a total of $47,917.34. [Doc. 139]

Despite an approximate one-third reduction of Plaintiffs' counsels requested hourly rate and a "meat-axe" reduction of 50% of the entire award, Defendants appealed this award on October 27, 2016. [Doc. 140] Accordingly, Plaintiffs cross-appealed. [Doc. 141]

Defendants neither sought nor obtained any stay of the collection of this award until October 11. 2017, more than a week after the Motion which is the subject of these Objections was decided against Defendants. [Doc. 166, p. 3; *See* Doc. 164] No supersedeas bond had been posted during the relevant time period. *Id*. No stay was entered in the Ninth Circuit Court of Appeals. [Doc. 148-9]

On January 27, 2017, Plaintiffs served Defendants with Interrogatories and Requests for Production of Documents as specifically authorized by Fed.R.Civ.P., Rule 69(a)(2). [Docs. 148-2 ¶ 10, 148-3]

Plaintiffs repeatedly attempted to communicate with Defendants on numerous occasions and over an extraordinary period of time pertaining to Defendants' failure to answer the discovery request, attempts which were largely ignored. [Doc. 148-2 ¶¶ 11-17, 23-42; 148-4; 148-5; 148-6; 148-7; 148-8; 148-11; 148-12; 148-13; 148-14; 148-15; 148-16; 148-17; 148-18]

Plaintiffs requested a meet and confer with defense counsel on at least five separate occasions. *Id*. Plaintiffs have repeatedly informed Defendants that this discovery and litigation could be avoided if Defendants would simply post the required appeal bond. *Id*.

The sole "response" to Plaintiffs' Discovery Requests was sent on April 11, 2017. [Doc. 148-10] Instead of answering the interrogatories and producing documents, Defendants wrote the following after each of Plaintiffs' Discovery Requests.

> **Kurt Tsuneyoshi objects on the ground that, as you have previously been informed, an appellate bond is being posted in connection with the de minimis/nuisance value settlement of $5,575.00 (total) you obtained on behalf of two of your clients. Kurt Tsuneyoshi further objects on the ground that all discovery is stayed pending mediation.**

[Docs. 148-2 ¶ 21; 148-10; 166, p. 2] Plaintiffs informed defense counsel of the insufficiency of this response, beginning the day Plaintiffs received this response. [Docs. 148-2 ¶ 24; 148-12].

Plaintiffs sent four more letters and e-mails regarding this issue and further requests for a meet and confer from April 11 until June 22, 2017. [Doc. 148-2 ¶¶ 23-28; 148-11; 148-12; 148-13; 148-14]

Despite all of these attempts by Plaintiffs to communicate regarding this matter for almost four months, it was not until June 27, 2017 that defense counsel agreed to meet and confer. [Doc. 148-2 ¶ 29-30; 148-14]   At defense counsel's request, a meet and confer was scheduled for July 5, 2017 at 4:45 p.m. the sole date and time offered by defense counsel that was not a date or time proposed by Plaintiffs, [Doc. 148-2 ¶¶ 29-30; 148-14]   Yet, when Plaintiffs' counsel called defense counsel on that date and time, <u>defense counsel did not answer her phone and the recorded message stated that the voicemails messages could not be accepted</u>. [Doc. 148-2 ¶¶ 29, 33; Doc. 148-15]

Plaintiffs e-mailed defense counsel immediately after she neglected to participate in the scheduled meet and confer. [Doc. 148-2 ¶ 34; 148-15] Yet, <u>defense counsel did not contact Plaintiffs' counsel until five days later and offered no explanation for her absence at the meet and confer.</u>[1] [Doc. 148-2 ¶¶ 35-36; 148-16]

---

[1] It was not until the meet and confer that Judge Mansfield ordered and Ms. Tanaka delayed until the day of the subsequent hearing, October 4, 2017, [Docs. 161-1 ¶ 33; 161-4], that Ms. Tanaka informed the undersigned that her father required medical care and that no reason needed to be provided to the undersigned for Ms.

*Footnote Con't

Finally, on July 25, 2017 the parties did meet and confer, almost five months after Plaintiffs' first request to do so.  [Doc. 148-2 ¶¶ 13, 39]  At that meet and confer, defense counsel promised that the bond would be posted on July 28, 2017 and Plaintiffs agreed to forego the discovery responses based on that promise. [Doc. 148-2 ¶ 39]

No bond was posted on July 28, 2017 despite Ms. Tanaka's promise.  [Doc. 166, p. 3 ("[f]or the first time, in the oral argument on the Motion on September 18, 2017, defense counsel represented to the Court that a bond had been obtained."). No discovery responses were provided.  *See Id*.

Yet, instead of filing the long overdue Motion to Compel, on August 7, 2017, Plaintiffs again wrote defense counsel attempting to resolve this matter without resort to litigation.  [Docs. 148-2 ¶ 41; 148-18]  Plaintiffs requested the posting of the bond by Wednesday, August 10, 2017 or at least an assurance that the bond would be posted by August 11, 2017.  *Id*.

Defendants did not respond to this final letter and <u>eleventh</u> correspondence from Plaintiffs in Plaintiffs' extraordinary months' long efforts to resolve this issue without resort to the Motion.  [Doc. 148-2 ¶ 42]

---

Tanaka's absence from the July 5 meet and confer because the undersigned "is not privy to that information."

Accordingly, on August 11, 2017 Plaintiffs filed their Motion to Compel Answers to Plaintiffs' First Interrogatories and Request for Production of Documents Pursuant to Fed. R. Civ. P., Rule 69(a)(2) or Alternatively, the Posting of Supersedeas Bond (hereinafter "the Motion").  [Doc. 148]

On August 28, 2017, Defendants filed their Response.  [Doc. 151]   In their Response, Defendants offered:

- No reason(s) why a bond had not been posted.  The judgment was entered almost one year prior, September 27, 2016.  [Doc. 139]    Defendants first promised to post a bond on March 16, 2017, [Doc. 148-7], before the parties voluntarily submitted to the Ninth Circuit's mediation program on April 10, 2017.  Defendants knew that Plaintiffs had agreed to no stay of collection without a sufficient bond after the mediation of April 10, 2017.  The lack of any such agreement is precisely why the insufficient answers to the instant discovery requests were provided the day after the mediation, April 11, 2017.  [*See* Doc. 148-10]   And, by any stretch, mediation had at least concluded more than two months before the Motion was filed according to defense counsel. [*See* Doc. 148-15 (e-mail from Sheri Tanaka opining that mediation concluded June 26, 2017)]

- No explanation as to why Defendants' counsel failed to adequately respond to Plaintiffs' (by the undersigned's count) <u>eight</u> separate correspondences

regarding this issue from February 16, 2017 until June 22, 2017.  [Docs. 148-4, 148-5, 148-6, 248-8, 148-11, 148-12, 148-13, 148-14]

- No explanation as to why Defendants' counsel failed to appear for the July 5, 2017 meet and confer and did not communicate at all with Plaintiffs until five days later.  [Docs. 148-15, 148-16]

- No explanation as to why a bond was not posted on July 28, 2017 as promised by defense counsel in the July 25 meet and confer. [Doc. 148-18]; and

- No explanation why Defendants failed to respond to Plaintiffs' "last-ditch" August 7, 2017 letter. [Doc. 148-18]

[*See* Doc. 151]

Instead of addressing these issues, Defendants submitted the irrelevant and perjured Declaration of Jacquelyn Galloway.   [Doc. 151-1]   Over Defendants' objections, [*see* Docs. 153, 155], Plaintiffs filed sealed documents decimating Ms. Galloway's false claims.   [Doc. 159]   These documents had been submitted three days prior in a related arbitration matter involving these Defendants and their counsel and defense counsel knew or should have known was false when she filed it.  [Docs. 153, 159]

Further:  despite the fact that Plaintiffs' counsel sent more than ten separate correspondences relating to this issue, the vast majority of which were ignored by

Defendants for months; despite Plaintiffs having informed Defendants on multiple
occasions that if they would simply post the required bond, Plaintiffs would agree
to a stay of collection and the discovery would be unnecessary;  despite defense
counsel's having failed to appear at a meet and confer which was scheduled on the
only date ever offered by defense counsel at that point (months after Plaintiffs first
requested a meet and confer); despite the fact that when defense counsel finally
met and conferred, more than four months after Plaintiffs' first request to do so,
Defendants promised to post the by July 28; and despite the fact that, even then,
before filing the Motion, the undersigned yet again wrote defense counsel seeking
some assurance that the bond would be posted only to have Defendants ignore that
correspondence (yet again), Defendants argued that the Motion was just a
harassing attempt to accrue attorneys' fees.  [Doc. 151]

Additionally, Defendants claimed for the first time that Plaintiffs' discovery
requests were "hybrid requests" and that the requests exceeded the limit permitted
by the applicable rules.  [Doc. 151]

The Motion was scheduled to be heard on September 18, 2017.  For the first
time at oral argument on the Motion, defense counsel announced that a bond had
been obtained.  [Doc. 166, p. 3]  "The Court continued the hearing on the motion
until October 4, 2017, for the specific purpose of allowing the parties to further
meet and confer and to file an appropriate request for a stay to which it was

anticipated that the Plaintiffs would stipulate.   Defendants, however, filed no request for a stay or otherwise obtained a stay by agreement" until October 11, 2017.  [Docs. 166, p. 3, 164]

Indeed, defense counsel did not even provide the documents pertaining to the bond until September 28, 2017.  [Doc. 162-4]  And, defense counsel delayed the meet and confer (ordered by the Magistrate on September 18) until the morning of the continued hearing, October 4, 2017.  [Doc. 162-1 ¶ 33; 162-4]

As memorialized in the undersigned's Declaration filed October 4, 2017 following the ordered meet and confer, the following occurred at the ordered meet and confer:

> 34. At the meet and confer, I again informed Ms. Tanaka that I would stipulate to a stay in collection so long as the bond is in effect. I had suggested that she file a Motion and I would stipulate. She suggested that she prepare a stipulation, to which I agreed.

> 35. I also had previously informed her that I would settle the fees and costs pertaining to this Motion for $3000. That was more than rejected.

> 36. Instead, at the meet and confer, Ms. Tanaka told me repeatedly that I was the most unethical attorney she had ever dealt with. Ms. Tanaka told me she would be filing ODC complaints against me because Ms. Galloway says I told Ms. Galloway to lie. I reminded Ms. Tanaka of the e-mails that I had filed under seal that decimate Ms. Galloway's allegations. Ms. Tanaka insisted that Ms. Galloway was telling the truth. Ms. Tanaka also insisted that when the parties went off the record at the 30(b)(6) deposition (at which Ms. Galloway testified as a Platinum designee), that Mr. Mac Master and I had threatened her or otherwise had some profanity laced tirades against her. I reminded her that not only was a court reporter present at all

times, but also Platinum's attorney John Mackey was present at all times. Ms. Tanaka stated that she did not know whether Mr. Mackey was receiving kickbacks from Mr. Mac Master and I because Mr. Mackey had also represented her client unethically. I was also accused of fraud for applying for attorneys' fees with hours that included work pertaining to Mr. Manankil (who was compelled to arbitration but was, nevertheless, still a witness in this case) and then negotiating (I believed at the time successfully) a settlement in his arbitration which included a nominal fee for my work in that proceeding. I reminded Ms. Tanaka that I applied for the fees pursuant to our Settlement Agreement, did so openly in Court, and that the judges in this case determined what was compensable and what was not. After these accusations continued for some time, I terminated the meeting and encouraged Ms. Tanaka to file whatever she believed was appropriate including any motions before this Court, any ODC complaints she thought were appropriate, and any filings in the pending arbitration that she deemed appropriate. As I left, I picked up my phone from the table and Ms. Tanaka stated "are you recording this, are you recording this" and attempted to snatch my phone from my hand. As I walked away, Ms. Tanaka said "you are so going to the ODC over this."

[Doc. 162-1]

Immediately after this meet and confer, Plaintiffs filed a supplemental brief expressly requesting fees and costs in the amount of $6,950.26 at $225 per hour or $9,267.01 at $300 per hour.  [Doc. 162]  Plaintiffs attached documents, including a Declaration and timesheet that support that award.  [Docs. 162-1, 162-2]

The Magistrate entered his Order on October 19, 2017.  [Doc. 166]  The Magistrate specifically and correctly found that Defendants had not adequately responded to the Discovery Requests served on Defendants on January 27, 2017. [Doc. 166, pp. 1-2]   The Magistrate specifically and correctly found that Defendants' boilerplate objections to the discovery requests were insufficient.

[Doc. 166, p. 2]    Because the objections were not properly raised before Defendants' Response to the Motion, the Magistrate specifically and correctly found that Defendants had "waived the objections raised in the Response pertaining to 'hybrid' discovery requests and that the Interrogatories exceed the number permitted."   [Doc. 166, p. 2]   The Magistrate specifically and correctly found that Defendants' only specific objections, *i.e.*, that a bond in the amount of $5,575 would be posted at some undesignated time and that the discovery was somehow "stayed", were insufficient.    [Doc. 166, pp. 2-3]    The Magistrate rejected these specific objections because:  a) a bond was never posted and $5,575 is an insufficient amount to secure the $47,917.34 judgment; and b) a stay was neither sought nor obtained with this Court.  [Doc. 166, p. 3]

Accordingly, Plaintiffs' Motion to Compel was granted and Defendants were ordered to satisfactorily answer the discovery requests on or before October 25, 2017.  [Doc. 166, p. 3]

However, Plaintiffs' request for fees and costs associated with the Motion was denied.   [Doc. 166, p. 4]   The Magistrate found only that "this case is being driven almost entirely by attorneys' fees and costs would therefore be unjust under the circumstances …"   *Id*.   The Magistrate declined to consider Plaintiffs' supplemental memorandum submitted immediately after the ordered meet and confer.  *Id*.

These objections follow.

## D.  Argument

Defendants' conduct in this matter has been beyond the pale.  [*see also* Doc. 135, pp. 19-22 (detailing Defendants' misleading of their own attorneys as to the existence of discoverable materials)]   This unfortunate conduct appears typical of defense counsel. Just two days before the entry of Judge Mansfield's instant Order, this Court upheld sanctions against Ms. Tanaka and her client in that case for similar refusals to cooperate in discovery and gamesmanship. *Marine Lumber Co., v. Precision Moving & Storage, Inc., a Hawaii corporation;* No. CV 16-00365 LEK-RLP,  2017 WL 4678470, at *3 (D. Haw. Oct. 17, 2017).

The mere fact that the undersigned represents indigent clients pursuant to express congressional and Hawaii's legislative intent should not lead to a different result here than the result in *Marine Lumber*, *supra*.  Plaintiffs' attorneys in fee-shifting cases should not be required to perform hours of work, due to a Defendant's recalcitrance, simply to achieve that to which any prevailing Plaintiff is entitled.  Any case could easily be held to be driven by attorneys' fees.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid.").   And the fact that Congress and the Hawaii legislature have specifically enacted mechanisms to encourage counsel to represent indigent clients

in these specific types of cases via a fee-shifting statute should not excuse

Defendants' conduct and certainly should not subject Plaintiffs' counsel to hours of

uncompensated time in addressing that conduct.

> The purpose of the FLSA attorney fees provision is "to insure
> effective access to the judicial process by providing attorney fees for
> prevailing plaintiffs with wage and hour grievances." *Id.* at 502.
> Courts should not place an undue emphasis on the amount of the
> plaintiff's recovery because an *1135 award of attorney fees here
> "encourage[s] the vindication of congressionally identified policies
> and rights." *Id.* at 503. Indeed, we have "upheld substantial awards of
> attorney's fees even though a plaintiff recovered only nominal
> damages." *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL
> 13108 at *2 (6th Cir.1985) (unpublished).

*Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994).  The result here is the

exact opposite of what the fee-shifting statutes contemplate and reward culpable

Defendants for discouraging would-be Plaintiffs' counsel from filing these claims

in direct contradiction to congressional intent.  Accordingly, a case being "fees

driven" should not amount to a "circumstance [that] make[s] an award of expenses

unjust" as a matter of law.  *See* Fed. R. Civ. P., Rule 37(a)(5)(iii).

Plaintiffs' request for fees pursuant to this Motion should be decided the

same as any other motion for sanctions in any other type of case.  Defendants

should be required to prove that "special circumstances would make an award of

expenses unjust."  *See David v. Hooker, Ltd.*, 560 F.2d 412, 419 (9th Cir. 1977)

(*citing* the then applicable Notes of the Advisory Committee on Rule 37); *Falstaff*

*Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 784 (9th Cir.1983).

Defendants have not met their burden. Defendants' responsive documents

- No reason(s) why a bond had not been posted. The judgment was entered almost one year prior, September 27, 2016. [Doc. 139] Defendants first promised to post a bond on March 16, 2017, [Doc. 148-7], before the parties voluntarily submitted to the Ninth Circuit's mediation program on April 10, 2017. Defendants knew that Plaintiffs had agreed to no stay of collection without a sufficient bond after the mediation of April 10, 2017. The lack of any such agreement is precisely why the insufficient answers to the instant discovery requests were provided the day after the mediation, April 11, 2017. [*See* Doc. 148-10] And, by any stretch, mediation had at least concluded more than two months before the Motion was filed according to defense counsel. [*See* Doc. 148-15 (e-mail from Sheri Tanaka opining that mediation concluded June 26, 2017)]

- No explanation as to why Defendants' counsel failed to adequately respond to Plaintiffs' (by the undersigned's count) <u>eight</u> separate correspondences regarding this issue from February 16, 2017 until June 22, 2017. [Docs. 148-4, 148-5, 148-6, 248-8, 148-11, 148-12, 148-13, 148-14]

- No explanation as to why Defendants' counsel failed to appear for the July 5, 2017 meet and confer and did not communicate at all with Plaintiffs until five days later. [Docs. 148-15, 148-16]

- No explanation as to why a bond was not posted on July 28, 2017 as promised by defense counsel in the July 25 meet and confer. [Doc. 148-18]; and

- No explanation why Defendants failed to respond to Plaintiffs' "last-ditch" August 7, 2017 letter. [Doc. 148-18]

[*See* Doc. 151]

Instead of addressing these issues, Defendants submitted the irrelevant and perjured Declaration of Jacquelyn Galloway. [Doc. 151-1] Over Defendants' objections, [*see* Docs. 153, 155], Plaintiffs filed sealed documents decimating Ms. Galloway's false claims. [Doc. 159] These documents had been submitted three days prior in a related arbitration matter involving these Defendants and their counsel and defense counsel knew or should have known was false when she filed it. [Docs. 153, 159] Moreover, the documents have no bearing whatsoever on the issues raised in the instant motions, *i.e.*, why the discovery had not been provided and/or why a bond had not been obtained.

Further: despite the fact that Plaintiffs' counsel sent more than ten separate correspondences relating to this issue, the vast majority of which were ignored by

Defendants for months; despite Plaintiffs having informed Defendants on multiple occasions that if they would simply post the required bond, Plaintiffs would agree to a stay of collection and the discovery would be unnecessary;  despite defense counsel's having failed to appear at a meet and confer which was scheduled on the only date ever offered by defense counsel at that point (months after Plaintiffs first requested a meet and confer); despite the fact that when defense counsel finally met and conferred, more than four months after Plaintiffs' first request to do so, Defendants promised to post the by July 28; and despite the fact that, even then, before filing the Motion, the undersigned yet again wrote defense counsel seeking some assurance that the bond would be posted only to have Defendants ignore that correspondence (yet again), Defendants argued that the Motion was just a harassing attempt to accrue attorneys' fees.  [Doc. 151]  This position is ludicrous. As shown by the numerous attachments to the Motion, Plaintiffs made extraordinary efforts to avoid bringing this motion altogether which would have alleviated the issue of entitlement to fees and costs.  Defendants did not respond and/or promised to obtain an insufficient bond at some unidentified date.

The award of fees and costs incurred, as requested here, is the rule rather than the exception.  Indeed, the Ninth Circuit has historically referred to such sanctions as "light sanctions" where other more drastic sanctions authorized by

Rule 37 have been denied. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1426-27 (9th Cir. 1985).

Even though Plaintiffs believe a finding of "willfulness" is supported by this record, historically a finding of "willfulness" has not been a necessary prerequisite to an award of fees for violations of discovery rules. *Id.* (*citing Societe Internationale v. Rogers*, 357 U.S. 197 (1958)); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994), *as amended* (July 25, 1994). These light sanctions are awarded for negligence rather than willfulness. *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir.1978); *Croomes v. Stream Glob. Servs.--AZ, Inc., No.* CV11-0141-PHX-JAT, 2012 WL 748307, at *2 (D. Ariz. Mar. 8, 2012).

The Ninth Circuit has also instructed that, at least when sanctions against an attorney are at issue, the provision relied upon by the Magistrate here (now codified as Rule 37(a)(5)(iii)) "requires us to consider the attorneys' behavior, rather than the client's actions." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994), *as amended* (July 25, 1994) (*citing Reygo Pac. Corp. v. Johnston Pump Co.,* 680 F.2d 647, 649 (9th Cir.1982)).

Examples of defense counsel's conduct relevant to this Motion that warrant at least the imposition of "light" sanctions of fees include but are not limited to:

- Her refusal to respond to numerous attempts to correspond with Defendants wherein Plaintiffs sought resolution of this matter and/or to meet and confer;

- Her failure to participate in the July 5, 2017 meet and confer (scheduled on the sole date and time offered by defense counsel more than four months after the discovery responses were due) with no communication for five days thereafter and no excuse for having missed the meet and confer until October 4, 2017 because the undersigned was not "privy" to the excuse;

- Her insincere promise to post the bond on July 28, 2017;

- Her failure to respond to the undersigned's letter of August 7 after the bond had not been posted;

- Her filing of the Galloway Declaration (now in multiple forums) when she knew or should have known that it was not only irrelevant but also false;

- Her withholding the fact that a bond had been obtained until the September 18, 2017 oral arguments;

- Her failure to provide the bond documents until ten days after the September 18, 2017 hearing and then postponing the meet and confer until the morning of the October 4, 2017 hearing;

- Her failure to seek a stay or provide the undersigned with a proposed stipulation despite the Magistrate having continued the hearing to permit her to do so; and

- Her conduct at the October 4, 2017 meet and confer.

The "light" sanctions requested here are not new to defense counsel.   At least twice in the past six months, this Court has sanctioned Ms. Tanaka for various failures to cooperate with opposing counsel in discovery in what amounts to the same gamesmanship employed in this matter.   *Marine Lumber Co. v. Precision Moving & Storage, Inc.*, No. 16-00365 LEK-RLP, 2017 wl 4678470 (D. Haw. Oct. 17, 2017).   When upholding sanctions against Ms. Tanaka, Judge Kobayashi found strikingly similar conduct as to that present here:

### I. 6/1/17 Order Appeal

A settlement conference was originally scheduled for May 23, 2017, and the parties agreed to depose Edward McGrath, Plaintiff's party representative, in Hawai'i on May 24, 2017 because Plaintiff's lead counsel and Mr. McGrath – who both live in Oregon – would be in Hawai'i for the settlement conference. When the settlement conference was continued to June 6, 2017,[2] Defendant refused to continue Mr. McGrath's deposition to June 7, 2017. [6/1/17 Order at 1-2.] Defense counsel notified Plaintiff's counsel that Mr. McGrath's deposition would proceed on May 24, 2017. [Def.'s Mem. in Opp. to Motion for Protective Order, filed 5/25/17 (dkt. no. 71), Decl. of Sheri J. Tanaka, Exh. F (letter dated 5/6/17).] Plaintiff did not produce Mr. McGrath for deposition on May 24. See Reply in Supp. of 6/1/17 Order Appeal, Decl. of Sheri J. Tanaka ("Tanaka 6/1/17 Order Appeal Reply Decl.") at ¶ 5 (stating that the 6/1/17 Order was filed "eight days after the no-show").

Two days before the scheduled deposition date, Plaintiff filed a Motion for Protective Order and Sanctions for Discovery Abuse ("Motion for Protective Order"). [Dkt. no. 69.] The magistrate judge granted the Motion for Protective Order, finding that there was good cause to prevent undue burden and expense. [6/1/17 Order at 5.] The magistrate judge awarded Plaintiff $2,500 in attorneys' fees and costs, finding that Defendant's objections to the proposed June 7, 2017 deposition date were not substantially justified. [Id. at 6-7.]

**II. 8/16/17 Order Appeal**

On April 28, 2017, Plaintiff's counsel requested to conduct depositions of various Precision personnel on June 8 and 9, 2017, *i.e.* following the June 7, 2017 settlement conference. Defendant's counsel did not inform Plaintiff's counsel until June 5, 2017 that Defendant's counsel and witnesses were not available on those dates, and counsel did not provide any explanation. [8/16/17 Order at 4-5.] "Precision, its counsel, and its corporate representative did not appear for the depositions." [Id. at 5.] Defendant did not move for a protective order regarding the June 8 and 9 depositions.

On July 3, 2017, Plaintiff filed a Motion to Hold Defendant in Contempt for Failure to Appear and for Sanctions for Discovery Abuse regarding the depositions noticed for June 8 and 9 ("Depositions Motion"). [Dkt. no. 80.] On July 7, 2017, Plaintiff filed a Motion for Sanctions for Discovery Abuse, arguing that sanctions were warranted because the majority of Defendant's written discovery responses were deficient. ("Sanctions Motion"). [Dkt. no. 82.] The magistrate judge granted both motions in part and denied them in part. [8/16/17 Order at 1.] The magistrate judge granted the Deposition Motion insofar as he ordered Defendant to pay: the expenses for new deposition dates, up to $1,500; and $1,500 in attorneys' fees and costs that Plaintiff incurred because of the missed June 8 and 9 depositions and in bringing the Depositions Motion. [Id. at 6.] In response to the Sanctions Motion, the magistrate judge concluded that Defendant's responses to various discovery requests were inadequate, ordered Defendant to provide complete responses, and sanctioned Defendant's counsel $2,500. [Id. at 7-13.]

*Id.* at 2.

The results here should not be different simply because the instant case relies on fee-shifting provisions of federal and state law to compensate Plaintiffs' counsel.

## E.  CONCLUSION

Plaintiffs object and fees and costs associated with the motion should be granted.  As supported by the attached Declaration and timesheet, Plaintiffs request an award of fees in the amount of $8,740.83, which includes the applicable GET tax, should this Court award the previously awarded rate of $225 per hour. Plaintiffs request and award of fees in the amount $11,654.45, which includes the applicable GET tax, should this Court award the requested rate of $300 per hour. Plaintiffs also request an additional $284.82 for tasks billed at a paralegal rate as specified in the timesheet.

DATED:  Honolulu, HI, November 1, 2017.

_s/Richard L. Holcomb_
Richard L. Holcomb (HI Bar 9177)
Attorney for Plaintiffs